IN THE MATTER OF: BRITTANY BEASLEY, PATRICIA BEASLEY, JUSTIN BEASLEY, TIMOTHY SAULS, MELISSA SAULS, JESSICA SAULS, MINOR CHILDREN

No. COA00-940

(Filed 4 December 2001)

**1. Termination of Parental Rights— neglect—prior adjudications—likelihood of repetition**

The trial court did not err in its determination that respondents were not fit to care for these children at the time of the termination proceeding and that the best interests of the children required that they be adjudged neglected at the time of the termination proceeding. Parental rights may be terminated when there is no evidence of neglect at the time of the termination proceeding if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile is returned to his or her parents.

**2. Termination of Parental Rights— neglect—chronic problems—failure to improve parenting skills—best interests of children**

The trial court did not err by concluding that it was in the best interests of these children that respondents' parental rights be terminated where the record showed parents who failed to provide a safe and healthy environment for their children over an extended period of time and who failed to prove that their parental abilities have significantly improved since the children were removed from their custody. There was overwhelming evidence supporting the trial court's conclusion that the probability of repetition of neglect was great and that the best interests of the children would be served by termination of respondents' parental rights.

Appeal by respondents from orders entered 9 February 2000 and signed 22 February 2000 and 7 March 2000 by Judge J. Patrick Exum in Wayne County District Court. Heard in the Court of Appeals 14 August 2001.

*E.B. Borden Parker, for petitioner-appellee Wayne County Department of Social Services.*

*Nicholas E. Harvey, Sr. for respondent-appellants.*

IN RE BEASLEY

[147 N.C. App. 399 (2001)]

CAMPBELL, Judge.

Janet Beasley ("respondent-mother") and Timothy Beasley ("respondent-father") (collectively, "respondents") appeal from an order terminating their parental rights to minor children Brittany Beasley ("Brittany"), Patricia Beasley ("Patricia"), and Justin Beasley ("Justin"). Respondent-mother also appeals from an order terminating her parental rights to minor children Timothy Sauls ("Timothy"), Melissa Sauls ("Melissa"), and Jessica Sauls ("Jessica"). Upon finding that grounds existed to terminate respondents' parental rights on the basis of neglect, the trial court concluded that it was in the best interests of the children to terminate respondents' parental rights. Respondents contend (1) that the evidence was insufficient as a matter of law to establish grounds for termination of their parental rights, and (2) that the trial court erred in concluding that it was in the best interests of the children to terminate respondents' parental rights.

The record shows that the Wayne County Department of Social Services ("DSS") opened its first case involving the children of respondent-mother in 1989. On 21 May 1992, DSS filed a petition alleging that Timothy, Melissa and Jessica Sauls ("the Sauls children"), were neglected juveniles. The Sauls children were removed from the custody of respondent-mother and were adjudicated neglected in an order dated 9 June 1992. Respondent-mother subsequently attended mental health counseling sessions and parenting classes, purchased a two-bedroom trailer, and found a job. As a result, the children were returned to the custody of respondent-mother in an order dated 27 October 1992.

On 28 November 1994, a second juvenile petition was filed, alleging that Melissa Sauls was an abused juvenile, and that all three of the Sauls children were neglected juveniles. This petition further alleged that Brittany Beasley, the newborn daughter of respondents, was also a neglected juvenile. At that time, respondents had not married, but were living together. The petition alleged that respondent-father had inflicted physical injury on Melissa Sauls, and that all four of the children were "living in an environment injurious to their welfare." The Sauls children were removed from the custody of respondents, while Brittany remained in respondents' custody. Respondents entered into an intervention plan with DSS, which required them to attend parenting classes and domestic violence classes. Respondents attended parenting classes, but only attended one domestic violence class. Respondents married on 8 January 1995, and custody of the Sauls

children was subsequently returned to them, contingent on their full compliance with the DSS intervention plan. Respondents completed parenting classes in March 1995, but did not attend further domestic violence counseling sessions, as required by the DSS intervention plan. DSS expressed concern about Melissa and Timothy Sauls' failure to attend therapy sessions, as well as concern over an incident of domestic violence between respondents. On 10 October 1995, the juvenile petition was heard, the allegations of abuse were dismissed, and all four of the children were adjudicated neglected. However, the children were allowed to stay in the custody of respondents, subject to respondents' continued cooperation with a new intervention plan. Subsequent review hearings were held, by which the children were allowed to stay in the custody of respondents, and by order dated 9 July 1996, the case was removed from the active calendar.

On 16 June 1998, DSS filed yet another juvenile petition alleging that the Sauls children and Brittany Beasley, along with their new sibling Patricia Beasley, were neglected juveniles. This petition alleged that the respondent-mother had been drinking, the children had been exposed to domestic violence, the children regularly missed school due to a continuing problem with head lice, and respondent-mother had refused to cooperate with DSS. Pursuant to this petition, the children were removed from respondents' custody. The children have remained out of the custody of respondents since that time. On 14 July 1998, the children were once again adjudicated neglected, and respondents were ordered to attend parenting classes and marriage counseling. Respondents were also ordered to undergo psychological and substance abuse evaluations.

Following this neglect adjudication, respondents completed parenting classes and were evaluated for marriage counseling. The therapist at the Wayne County Mental Health Center determined that marriage counseling was not needed. Respondent-mother underwent psychological evaluation, after which it was recommended that she "be given increased access to her children which could include full custody." Respondent-father submitted to a substance abuse evaluation, whereupon it was determined that there was no need for more formal evaluation.

Upon subsequent review hearings, custody of the Sauls children remained with their maternal grandfather, while Patricia and Brittany Beasley remained in the custody of foster care, despite recommendations to the court that they be returned to respondents. Over the next several months, the children remained out of respondents' custody,

but respondents were granted unsupervised overnight visitation with Patricia and Brittany Beasley.

On 3 May 1999, respondent-mother gave birth to Justin Beasley. On 4 May 1999, a juvenile petition was filed alleging that Justin Beasley was a neglected and dependent juvenile, and custody of Justin Beasley was granted to DSS. On 8 June 1999, Justin Beasley was adjudicated neglected and dependent, and his custody was continued with DSS.

On 14 July 1999, DSS filed a petition to terminate respondents' parental rights to Brittany, Patricia and Justin Beasley on the grounds that the children were neglected juveniles within the meaning of N.C. Gen. Stat. § 7B-101(15). On 29 July 1999, DSS filed a petition to terminate respondent-mother's parental rights to the Sauls children on the grounds that the children were both neglected and abandoned. The petitions came on for hearing concurrently on 31 January 2000. The trial court entered orders on 9 February 2000 finding that all of the minor children had previously been adjudicated neglected, and "[t]hat there is a clear pattern of neglect and the probability of repetition of neglect is very great." Thereupon, the court concluded that the grounds existed to terminate respondents' parental rights. The court further concluded that no credible evidence existed to support a conclusion that the best interests of the children would not be served by termination of respondents' parental rights; in fact, the trial court expressly concluded that the children's best interests would be served by termination of respondents' parental rights. From the orders terminating their parental rights, respondents appeal.

Respondents bring forward five assignments of error on appeal; however, these assignments only present for review the following two issues: (1) whether the trial court erred in concluding that sufficient grounds existed authorizing termination of respondents' parental rights, and (2) whether the trial court erred in concluding it was in the best interests of the children to terminate respondents' parental rights. Based on our examination of the record, we must disagree with respondents' contentions on these issues.

We note initially that the North Carolina Juvenile Code, including the article entitled "Termination of Parental Rights," was extensively revised and renumbered as Chapter 7B of the General Statutes, effective 1 July 1999. 1998 N.C. Sess. Laws ch. 202, § 6. The petitions for termination of parental rights in the instant case were filed on 14 July

1999 and 29 July 1999. Therefore, this case falls under the provisions of Chapter 7B.

The termination of parental rights statute provides for a two-stage termination proceeding: N.C. Gen. Stat. § 7B-1109 (formerly N.C. Gen. Stat. § 7A-289.30) governs the adjudication stage, and N.C. Gen. Stat. § 7B-1110 (formerly N.C. Gen. Stat. § 7A-289.31) governs the disposition stage. *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997); *In re Leftwich*, 135 N.C. App. 67, 71, 518 S.E.2d 799, 802 (1999). At the adjudication stage, the party petitioning for the termination of parental rights must show by clear, cogent, and convincing evidence that facts exist authorizing termination of parental rights on one or more of the grounds set forth in N.C. Gen. Stat. § 7B-1111 (formerly N.C. Gen. Stat. § 7A-289.32). N.C. Gen. Stat. § 7B-1109(e)-(f) (2000). "Once the court has determined that grounds for terminating parental rights are present, the court then 'moves to the disposition stage to determine whether it is in the best interests of the child to terminate the parental rights.'" *In re Leftwich*, 135 N.C. App at 71, 518 S.E.2d at 802 (quoting *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 615 (1997)).

Under N.C.G.S. § 7B-1111, the court may terminate parental rights upon a finding that the juvenile is a neglected juvenile. N.C. Gen. Stat. § 7B-1111(a)(1) (2000). The juvenile shall be deemed neglected if the court finds the juvenile to be a "neglected juvenile" within the meaning of N.C. Gen. Stat. § 7B-101. *Id.* N.C. Gen. Stat. § 7B-101(15) defines "neglected juvenile" as follows:

> A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law . . . .

N.C. Gen. Stat. § 7B-101(15) (2000). To prove neglect in a termination case, there must be clear, cogent, and convincing evidence (1) the juvenile is neglected within the meaning of N.C.G.S. 7B-101(15), and (2) "the juvenile has sustained 'some physical, mental, or emotional impairment . . . or [there is] a substantial risk of such impairment'" as a consequence of the neglect. *In re Reyes*, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000) (quoting *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993)).

"A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." *In re Young*, 346 N.C. at 248, 485 S.E.2d at 615.

> During a proceeding to terminate parental rights, the trial court must admit and consider evidence, find facts, make conclusions and resolve the ultimate issue of whether neglect authorizing termination of parental rights under N.C.G.S. 7A-289.32(2) [now N.C. Gen. Stat. 7B-1111(a)(1)] and 7A-517(21) [now N.C. Gen. Stat. 7B-101(15)] is present at that time. N.C.G.S. 7A-289.30(d)[now N.C. Gen. Stat. § 7B-1009(e)]. The petitioner seeking termination bears the burden of showing by clear, cogent and convincing evidence that such neglect exists at the time of the termination proceeding. N.C.G.S. 7A-289.30(e)[now N.C. Gen. Stat. § 7B-1109(f)].

*In re Ballard*, 311 N.C. 708, 716, 319 S.E.2d 227, 232 (1984) (citations omitted). Consequently, "[t]ermination of parental rights for neglect may not be based solely on past conditions which no longer exist." *In re Young*, 346 N.C. at 248, 485 S.E.2d at 615.

However, the North Carolina Supreme Court has recognized that in most termination cases the children have been removed from the parents' custody before the termination hearing. *In re Ballard*, 311 N.C. at 714, 319 S.E.2d at 231. Consequently, "to require that termination of parental rights be based only upon evidence of events occurring after a prior adjudication of neglect which resulted in removal of the child from the custody of the parents would make it almost impossible to terminate parental rights on the ground of neglect." *Id.* at 714, 319 S.E.2d at 232. "Therefore, a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." *Id.* at 713-14, 319 S.E.2d at 231. However, where the children have been removed from the parents' custody before the termination hearing, and the petitioner presents evidence of prior neglect, including an adjudication of such neglect, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *Id.* at 715, 319 S.E.2d at 232. "The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding.*" *Id.* (emphasis in original).

In summary, "[i]f there is no evidence of neglect at the time of the termination proceeding . . . parental rights may nonetheless be

terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to [his or] her parents. *In re Reyes*, 136 N.C. App. at 815, 526 S.E.2d at 501. "Thus, the petitioner need not present evidence of neglect subsequent to the prior adjudication of neglect." *Id.*

[1] Respondents first argue that the evidence presented and the facts found do not support the trial court's conclusion of law that sufficient grounds existed authorizing termination of respondents' parental rights (i.e., that the children were neglected at the time of the termination proceeding). We first note that respondents have not specifically excepted to any of the trial court's findings of fact, and they are therefore conclusive on appeal. *In re Caldwell*, 75 N.C. App. 299, 301, 330 S.E.2d 513, 515 (1985). Respondents' broadside exception that the trial court's conclusion of law is not supported by the evidence, does not present for review the sufficiency of the evidence to support the entire body of the findings of fact. *Id.* Instead, the trial court's findings of fact are binding on appeal, and we are left to determine whether the trial court's findings support its conclusion of law. *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), *appeal dis'd and disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001). Having reviewed the trial court's order, we find that its findings of fact do support its conclusion of law that the children in the instant case were neglected.

In its orders terminating respondents' parental rights, the trial court indicated that it admitted into evidence without objection the previous court files showing prior instances of neglect of the children which resulted in previous adjudications of neglect.[1] Based on the evidence in these prior proceedings, the trial court made extensive findings of fact showing a clear pattern of neglect going back as far as 1992, and further found that "the probability of repetition of neglect is very great." The trial court also made findings of fact that indicated it had considered evidence presented by respondents that conditions had changed since the previous adjudications of neglect. Included among these findings were the following:

That under repeated questioning in Court, Janet Beasley testified that she learned how to be a better mother, but the only specific

---

1. The Sauls children were adjudicated neglected on three prior occasions; Brittany Beasley was adjudicated neglected on two prior occasions; and Patricia and Justin Beasley were each adjudicated neglected on one prior occasion.

thing she could testify that she learned was how to properly discipline her children with "time out." That Janet Lindsey, who taught two of the parenting classes to Janet Beasley, testified that she was unaware of anyone who had been required to take the [parenting] courses three times. The courses are educational but not therapeutic.

. . .

Janet Beasley believes that the children were removed from her home in 1998 because she made a mistake and the only mistake she acknowledges making is "hanging out" with the wrong people. She testified, however, that there was nothing wrong with the people she was "hanging out" with when she was living in Calypso.

. . .

That Janet and Timothy Beasley live in the same trailer that they have lived in since November of 1999 in the same trailer park they have lived in for a year.

That Timothy Beasley is employed and has been employed at the same place for at least one year.

. . . .

These findings of fact clearly indicate that the trial court considered evidence of changed conditions and did not base its conclusion that the children were neglected solely on the prior adjudications of neglect. The trial court's order is sufficient to indicate that it considered the evidence of changed conditions in light of the clear pattern of neglect exhibited by respondents and the court's finding that there was a high probability of repetition of neglect in the future. Having done so, the trial court was required to determine whether grounds existed authorizing termination of respondents' parental rights at that time, based on the best interests of the children and the fitness of the respondents to care for the children at the time of the termination proceeding. Having reviewed the record, we cannot say that the trial court erred in its determination that respondents were not fit to care for the children at the time of the termination proceeding and that the best interests of the children required that they be adjudged neglected at the time of the termination proceeding. Therefore, respondents' first argument is overruled.

**[2]** Respondents also assign error to the trial court's determination that there was no credible evidence to support a conclusion that the best interests of the children would not be served by termination of respondents' parental rights, and, in fact, that the children's best interests would be served by termination of respondents' parental rights. Even where the trial court finds that one or more grounds exist which warrant termination of parental rights, the trial court is not required to order termination of parental rights if the trial court further concludes that it would be in the best interests of the children not to do so. N.C. Gen. Stat. § 7B-1110(a) (2000).

Respondents argue that the trial court erred in concluding it was in the children's best interests to terminate respondents' parental rights, because respondents had made significant strides at the time of the termination proceeding to allow them to care for the children.

In the instant case, the record shows parents who have failed over an extended period of time to provide a safe and healthy environment for their children, and who have failed to prove that their parental abilities have significantly improved since the children were removed from their custody. There was overwhelming evidence of the chronic nature of respondents' behavior to support the trial court's conclusion that the probability of repetition of neglect in the future was great. There was also overwhelming evidence that the best interests of the children would be served by termination of respondents' parental rights. Among the findings that support this conclusion are the following:

That [] Brittany N. Beasley and Patricia Doris Beasley are now always happy, clean, and smiling since they are living with their maternal grandparents, James and Fannie Davis.

That Justin Beasley is being properly and well cared for in the home of Patricia Sasser.

. . .

That both Timothy Sauls and Danielle Sauls have failed at least two grades, generally because they had not attended school on a regular basis when they were living with their mother, Janet Beasley. Both Timothy and Danielle Sauls are hyperactive and both are on medication. Danielle Sauls is ADD. Danielle Sauls was a very bright child until she was approximately four (4) years

**IN RE BEASLEY**

[147 N.C. App. 399 (2001)]

old. She then lived with Janet Beasley and was possibly abused by a man.

. . .

That the children have spoken In Chambers to several different Juvenile Court Judges, stating that not only did they not want to be returned to the custody of their mother, but that they did not want to have anything to do with her.

That Patricia Johnson Dennis, who was the guardian ad litem for the children for approximately one year, stated that the pattern of treatment of the children by Janet and Timothy Beasley was detrimental to the children and would be detrimental to younger children. The former guardian ad litem, Patricia Johnson Dennis, strongly recommended that the parental rights of Janet Beasley and Timothy Beasley be terminated with respect to the children. She was of the opinion that the children had been badly neglected and abused for years.

That several social workers, called by respondents, testified that the respondents had not done much to improve their situation and that it was not in the best interest of the children to be returned to them.

. . .

That Angela Fox, current guardian ad litem of the children, testified that she had made substantial investigations concerning these children and that the best interest of the children would be served by terminating the parental rights of the parents. Angela Fox testified that the Beasleys have an unrealistic view of what it takes to care for children.

. . . .

Based on the foregoing findings, coupled with the clear pattern of neglect and the previous adjudications of neglect, we cannot say that the trial court erred in concluding that it was in the children's best interests to terminate respondents' parental rights. Therefore, we overrule respondents' argument.

In conclusion, we find no error in the proceedings to terminate respondents' parental rights. Therefore, the orders entered by the trial court are affirmed.

Affirmed.

Judges GREENE and BRYANT concur.