STEELMAN, Judge.
Respondent is the mother of two children, J.G.A. who was born in November of 1999 to her and her husband Mr. Apgar (Apgar), and E.M.P. who was born in November of 2001 to her and her boyfriend Mr. Pease (Pease). Respondent, J.G.A. and Apgar lived together for less than one year before respondent took J.G.A. and moved to North Carolina to live with Pease, where she subsequently gave birth to E.M.P.
In May of 2001, while at home alone with Pease, J.G.A. suffered a spinal cord injury resulting in hospitalization and extensive and prolonged rehabilitation. Respondent testified that she believed Pease was too rough with J.G.A. In an interview with a social worker on 9 May 2002, respondent admitted that she suspected that Pease caused J.G.A.'s injury while imitating wrestling moves, and that he continued to do so even after J.G.A.'s injury.
Respondent also admitted that she had concerns about Pease's care of E.M.P. She told the social worker that Pease would yell and scream at the infant, and that she saw him on several occasions pick up E.M.P. swiftly causing her head to snap back. She also told the social worker that Pease would "jiggle" the baby in an attempt to get her to stop crying, that Pease had a bad temper, and that he would throw things, slam doors, and scream and holler at both her and the children.
A family friend and co-worker of respondent's told the social worker that Pease had once called respondent while he was taking care of the children yelling and screaming and threatening to kill himself, but that respondent would not call the police. Interviews with a couple that rented a room in Pease's home indicated that when E.M.P. was crying Pease would pick her up and take her into his room and shut the door. The couple indicated that they could tell by the sound of the infant's crying that she was being shaken by Pease. They also confirmed respondent's reports of Pease's harsh way of picking up E.M.P. and putting her down. At the permanency hearing respondent denied ever knowing that Pease shook E.M.P. On 8 May 2002 E.M.P. was taken to the emergency room because she was pale and lethargic and having difficulty breathing. She had been in the sole care of Pease when the symptoms occurred. E.M.P. was diagnosed with shaken baby syndrome, and was bleeding in the eyes and brain. Fresh bruises on the back of her head over previous fractures suggested that E.M.P. had been shaken on more than one occasion. At seven months she was functioning at a three month level. In September of 2002 a shunt was placed in her head to release fluid from around her brain, and she was found to be legally blind in her right eye. At sixteen months (the time of the hearing in issue), E.M.P. was unable to talk, crawl, or sit unaided. She was unable to digest solid food, and it took an hour and a half to feed her. E.M.P. is permanently brain damaged, and will never lead a normal life.
Granville County Social Services filed a petition against both respondent and Pease alleging abuse and neglect on 9 May 2002, and took both children into non-secure custody. Pease was arrested and charged with felony child abuse inflicting serious injury, and was in jail awaiting trial at the time of the disposition hearing before Judge Lloyd. Respondent signed a family services plan in which she agreed to complete a full psychological evaluation and comply with any recommended treatment. The evaluation was conducted, and respondent was told to attend individual therapy that would enable her to make appropriate choices in her relationships. Respondent began counseling in June of 2002. The therapist concluded that respondent had a pattern of involvement with abusive men. Respondent attended four sessions, then stopped against the advice of her therapist. In October of 2002, respondent was interviewed by Dr. Ray Newman. At the disposition hearing Dr. Newman testified that he was concerned with respondent's history of bringing negative male role-models and caregivers into the children's lives. He was particularly disturbed that within a one year period respondent had been living with Pease, had brought Apgar back into her life, sent him away again, then moved in with a third man (Brickles). Dr. Newman testified that in J.G.A.'s vulnerable state "he needs stable male role models and he needs predictable and consistent and safe caretakers. And so my main observations were that she enter counseling and complete counseling to resolve the issues of the multiple relationships with males and her propensity to choose males who are not good caretakers for her children."
J.G.A.'s father, Apgar, came to North Carolina and moved in with respondent in September of 2002, at the request of respondent. He attended supervised visits with the children. After approximately two months, he left North Carolina. In December of 2002 respondent became involved with Brickles, and became engaged to him a month later. Social Services counseled respondent against moving in with Brickles because he had an extensive criminal record, including a conviction for assault on a female. Respondent was advised that moving in with Brickles would hamper her efforts to reunify with her children. Nonetheless, respondent chose to move in with Brickles. At an adjudication hearing held 12 December 2002 respondent consented to an adjudication of neglect for both her children. After repeated continuances allowed at the request of respondent, a disposition hearing was held before Judge H. Weldon Lloyd, Jr. on 15 May 2003. At the conclusion of all the evidence, Judge Lloyd ordered that reunification efforts be ceased and that Granville County Department of Social Services initiate termination proceedings. Judge Lloyd filed orders in both juvenile cases 9 June 2003. Respondent appeals from these two disposition orders.
In her first and second assignments of error, respondent argues that the trial court's statements during the disposition hearing constituted prejudicial error in that they demonstrated that the trial court had formed an opinion concerning the cases before it had heard all the evidence. We disagree.
Respondent directs our attention to 10 separate remarks by the trial judge contained in the 207 page transcript of the disposition hearings. The subject of these comments ranged from decisions made by respondent and her apparent inability to rectify conditions detrimental to her children, to the severity of the injuries suffered by the children. As to one comment, respondent asserts: "Appellant is not really sure what the judge is trying to say here but the effect of the comment is that it shows he has formed an opinion before the close of all evidence." Respondent argues that the cumulative effect of these comments was to demonstrate that the judge was not fair and impartial to respondent in the hearing. The only authority cited by respondent to this Court is N.C. Gen. Stat. § 15A-1222, which prohibits the trial judge from expressing opinions in the presence of a jury. The instant case is not a criminal case, and it was not tried before a jury. "[T]he rules prohibiting expressions of opinion by trial courts have no application in proceedings before a judge sitting without a jury." Consolidated Systems, Inc. v. Granville Steel Corp., 63 N.C. App. 485, 489, 305 S.E.2d 57, 60 (1983) (emphasis in original)(citation omitted). Further, during the hearing Judge Lloyd explained the rationale behind his probing comments, stating that because this was a hearing involving potential termination of parental rights:
That shifts it to an entirely different ball game. That means it's probably the most serious of all the hearings. And for anybody . . . to say, well, we can get to this in a little afternoon and get it over with is making something awful frivolous of something awfully serious. So I listened carefully and I poked holes in both sides as much as I could to try to go one way or the other because my inclination lots of times is - we only do this under extreme circumstances.
After reviewing all of the trial court's comments complained of by respondent in the context of the evidentiary hearing, we find no error. These assignments of error are without merit.
In her third assignment of error respondent argues that the trial court erred by failing to consider respondent's evidence of changed circumstances. We disagree.
Respondent's sole argument under this assignment of error is that the trial court erred because it discouraged her from putting on evidence concerning her new boyfriend, Brickles, with whom she was currently living. The record indicates that the trial court explained its position: Brickles character was not the issue, it simply believed in light of respondent's history of involving herself with, and subjecting her children to, a series of irresponsible men, she should not be involving herself so quickly with yet another man while she was attempting to regain custody of her children. This position is supported by the evidence presented by mental health witnesses at trial. Further, the trial court stated that "What kind of person he (Brickles) is makes no difference in my decision." Nevertheless, the trial court made it clear that the respondent could call Brickles as a witness. Respondent elected not to call Brickles as a witness, nor did she make any proffer of his testimony on the record for review by the appellate court. In the absence of a record showing the nature of the excluded testimony, respondent can show no prejudice. N.C. R. Evid. Rule 103(a)(2); River Hills Country Club, Inc. v. Queen City Automatic Sprinkler Corp., 95 N.C. App. 442, 446, 382 S.E.2d 849, 851 (1989). This assignment of error is without merit.
In her fourth and fifth assignments of error respondent argues that there was insufficient evidence to support the trial court's findings that respondent "consistently left the juveniles with caretakers who she felt were irresponsible," and that respondent's "behavior and actions continued to exhibit a failure to provide for the best interests and welfare of the juveniles." We disagree.
We initially note that though she assigned as error in the record the trial court's finding of fact that respondent's "behavior and actions continued to exhibit a failure to provide for the best interests and welfare of the juveniles," and she references this assignment of error in her brief, she does not argue it in her brief, and thus it is deemed abandoned. N.C. R. App. P. Rule 28(b)(5); Strader v. Sunstates Corp., 129 N.C. App. 562, 567, 500 S.E.2d 752, 755 (1998). Further, though she attempts to argue in her brief that the trial court erred in finding as fact that respondent consistently left the children with men in whose care they were injured, she did not assign this finding of fact as error in the record. Because she did not assign this finding as error in the record, it is deemed abandoned. N.C. R. App. P. 10(a); Koufman v. Koufman, 330 N.C. 93, 98, 408 S.E.2d 729, 731 (1991).
Thus, our analysis of these assignments of error is limited to whether there was sufficient evidence to support the trial court's finding that respondent "consistently left the juveniles with caretakers who she felt were irresponsible."
All dispositional orders of the trial court after abuse, neglect and dependency hearings must contain findings of fact based upon the credible evidence presented at the hearing. If the trial court's findings of fact are supported by competent evidence, they are conclusive on appeal. In a permanency planning hearing held pursuant to Chapter 7B, the trial court can only order the cessation of reunification efforts when it finds facts based upon credible evidence presented at the hearing that support its conclusion of law to cease reunification efforts.
In re Weiler, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003) (internal citations omitted). In the instant case, there was credible evidence that respondent left her children in the care of two men, each the father of one of her children, whom she felt were irresponsible. Dr. Ray Newman testified that respondent believed Apgar to be a tentative father who was uncomfortable handling his son, and who had difficulty retaining employment. Despite respondent's reservations about his parental competence, Apgar was the primary caregiver for J.G.A. for a period of time until respondent became involved with Pease and moved to North Carolina. Respondent testified that Apgar "hadn't done a lot for J.G.A., hadn't paid child support, hadn't been there when I needed him, hadn't been there when I called him, hadn't been there when I have taken [J.G.A.] to go and see him." Yet respondent again brought Apgar into the boy's life (after the children were given into the custody of Social Services) with the intent that he be a caregiver for the child.
After moving in with Pease, respondent gave birth to his daughter E.M.P. Respondent repeatedly left both E.M.P. and J.G.A. in the sole care of Pease, despite her knowledge that he was too rough with J.G.A., including demonstrating professional wrestling moves on the boy after his spine had been damaged while in Pease's care. Respondent further testified that Pease would get "real frustrated" with his infant daughter and "yell and scream and holler" at her. She also testified that on several occasions she observed Pease handling E.M.P. roughly, picking her up or putting her down so rapidly that the four month old infant's head would "just kind of flop back."
We find that this evidence is sufficient to support the trial court's finding of fact. These assignments of error are without merit.
In respondent's sixth, seventh and eighth assignments of error, she argues that the trial court's findings of fact do not support its conclusion of law that it would be in the best interest of the children to cease reunification efforts and proceed to termination of parental rights. We disagree.
Respondent argues that none of the trial courts findings of fact satisfy the requirements of N.C. Gen. Stat. § 7B-507(b) (2004) for ordering the cessation of reunification efforts. In order for a trial court to order the cessation of reunification efforts, it must find at least one of the four enumerated situations. Under N.C. Gen. Stat. § 7B-507(b)(1) the trial court may cease reunification efforts if it finds: "Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]" In both of the orders relieving the Department of Social Services from further pursuing reunification of the children with respondent, the trial court found: "the respondent mother's neglect and failure to provide for the safety of the juvenile contributed to the injuries received . . . and that the mother's behavior and actions continue to exhibit a failure to provide what is in the best interest of the juvenile and provide for the best welfare of the juvenile" and "considering the time that the juvenile has been in the custody of the Granville County Department of Social Services and the lack of progress that the mother has made in dealing with the issues resulting in the original removal of the juvenile from the home, it would be in the best interest of the juvenile for the Granville County Department of Social Services to cease reunification efforts . . . ." We hold that these findings are sufficient to satisfy the requirements of N.C. Gen. Stat. § 7B-507(b)(1).
Respondent further argues that there is insufficient evidence to support the trial court's conclusion that it would be in the best interest of the child to cease reunification efforts and proceed with termination. Our duty is not to determine if there is competent evidence to support the trial court's conclusions of law, rather, we determine whether the trial court's findings of fact support its conclusions of law. In re Beasley, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001). The trial court's findings of fact will only be reviewed where they were properly made assignments of error in the record and argued on appeal. Id. Respondent has only properly preserved an argument contesting part of one of the trial court's findings of fact, which was discussed above. This finding was found to be supported by the evidence. Since the remaining findings of fact were unchallenged, they are deemed supported by competent evidence and binding on this Court on appeal. In re Beasley, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001). The only question for our consideration is whether the findings support the conclusion that it would be in the best interest of the child to cease reunification efforts and proceed with termination. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), appeal dis'd and disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001).
The trial court, inter alia, found as fact in the orders altering the plans from reunification to termination for both juveniles that: the juveniles were adjudicated neglected at the December 2002 term of Granville County Civil District Juvenile Court; that the juveniles came into the custody of the Granville County Department of Social Services on 9 May 2002 pursuant to a petition alleging neglect and abuse, and have remained in said custody; that the juveniles came into the custody of Social Services as a result of E.M.P.'s shaken baby syndrome and fear that both juveniles were in danger of further injuries by respondent's live in boyfriend, Pease, who was in the Granville County jail awaiting trial on criminal charges resulting from the incident; that J.G.A. received injuries while in the care of Pease prior to the injuries to E.M.P. that were never investigated as a neglect or abuse matter; that Apgar, J.G.A.'s father, briefly moved in with respondent, then moved back out while Social Services had custody of the children; that after this, while respondent was still working to reunify with her children, she began seeing as her boyfriend Brickles, a convicted felon, and was warned by Social Services that this action would not be in the best interests of the children and could hamper reunification efforts; that respondent continued to date Brickles, and even moved in with him, and continued to reside with him at the time of these orders; that respondent has consistently left the children with male caretakers whom she felt were irresponsible or in whose care they have been injured; that she failed a drug test in December of 2002; that Dr. Newman recommended 1) the juveniles remain in their current foster care placements, 2) that visits by respondent continue to be supervised, 3) that respondent should enter counseling to deal with the issue of her troubled relationships with men and the subsequent increased risk to her children, 4) and that she develop a stable home including appropriate caretakers for the children's special needs; that respondent's neglect and failure to provide for the safety of the children contributed to their injuries; that respondent's continued behavior and actions continue to exhibit a failure to provide for what is in the best interest of the children; that the length of time the children have been in the custody of Social Services, and the lack of progress of respondent in that time, indicate that reunification efforts are contrary to the children's interests.
We hold that these findings of fact are sufficient to support the trial court's conclusions that it was in the best interests of the children to cease reunification efforts and proceed with termination. This assignment of error is without merit.
In respondent's final two assignments of error she argues: 1) "The trial court committed reversible error when it ordered petitioner to proceed to termination of parental rights in both cases," and 2) "The trial court committed reversible error when it failed to order a review hearing pursuant to N.C. Gen. Stat. § 7B-905 or a permanency planning hearing pursuant to N.C. Gen. Stat. § 7B-507." These assignments of error violate Rule 10(c)(1) of the North Carolina Rules of Appellate Procedure in that they do not specify the "legal basis upon which error is assigned." Bustle v. Rice, 116 N.C. App. 658, 659, 449 S.E.2d 10, 11 (1994); see also Kimmel v. Brett, 92 N.C. App. 331, 374 S.E.2d 435 (1988). They are therefore deemed abandoned.
AFFIRMED.
Judges CALABRIA and GEER concur.
Report per Rule 30(e).