IN RE: J.G., D.B.
No. COA07-674
Court of Appeals of North Carolina.
Filed November 6, 2007
This case not for publication
Janna D. Allison, for respondent-appellant.
Poyner & Spruill, LLP, by Bryn D. Wilson, for appellees-Guardians ad Litem.
Al Singer and Corinne G. Russell, for petitioner-appellee.
CALABRIA, Judge.
Brandon P. ("respondent") appeals from the order terminating her parental rights to J.G. and D.B (collectively, "the minor children"). The order also terminated the parental rights of J.G.'s father ("Terry G."), who is not a party to the instant appeal. D.B.'s father, William B., relinquished his parental rights to the child on 6 February 2007. We affirm.
On 29 September 2005, Wake County Human Services ("WCHS") filed a petition and obtained non-secure custody of J.G., D.B., and their half-sister N.P. The petition alleged that J.G. was a neglected juvenile, and that D.B. and N.P. were neglected and dependent juveniles within the meaning of N.C. Gen. Stat. § 7B-101(9), (15) (2005). The petition reported that police had charged respondent with child abuse after she left multiple bruises on seven-year-old J.G.'s back while whipping him with a belt. It further alleged that the minor children had witnessed a knife fight in the home between respondent, their maternal grandmother, and Terry G. Subsequently, Terry G. acknowledged to WCHS that he smoked marijuana and got "high" but claimed he did so outside the presence of the children. Finally, the petition alleged that the family's apartment contained only four beds for nine occupants, and that respondent continued to live with the minor children's maternal grandmother, Laurenette Perry ("L.P."), despite knowing that L.P. abused cocaine and recently gave birth to a cocaine-positive baby.
On 10 November 2005, the district court entered a consent order adjudicating the minor children neglected and dependent as alleged in the petition filed by WCHS. The court placed the minor children in the legal custody of WCHS and granted respondent supervised visitation. Respondent was ordered to follow the recommendations of her substance abuse assessment, attend individual domestic violence counseling, submit to and follow the recommendations of a psychological evaluation, "obtain and maintain stable housing and employment or other income adequate to provide for the basic needs of the [children,]" and attend a parenting class.
Following review and permanency planning hearings in January, May, and September of 2006, the district court entered an order on 10 October 2006, relieving WCHS of further reunification efforts and changed the permanent placement plan for N.P. to custody with her paternal grandmother and for J.G. and D.B. to adoption with a concurrent plan of custody with a relative. The court found that further efforts to reunify the minor children with respondent-mother would be futile, in light of her continual positive tests for marijuana and cocaine use, her lack of stable employment and housing, and her failure to receive mental health therapy or psychiatric treatment. Since respondent wished to be reunified with her children, the court ordered respondent to comply fully with the recommendations for completing substance abuse and psychological assessments, obtaining stable employment and housing, and paying child support.
On 27 November 2006, WCHS filed a motion to terminate respondent's parental rights to J.G. and D.B. on the grounds that she had (1) neglected the children, and (2) willfully left the children in a placement outside the home for more than twelve months without showing reasonable progress to correct the conditions which led to their removal. N.C. Gen. Stat. § 7B-1111(a)(1), (2) (2006). After a hearing on 7 February 2007, the district court terminated respondent's parental rights. In the 22 February 2007 termination order, the court found grounds for termination and further concluded that termination would serve the best interests of the children.
On appeal, respondent claims that the evidence and the district court's findings of fact were insufficient to establish grounds for termination based on neglect or lack of reasonable progress under N.C. Gen. Stat. § 7B-1111(a)(1) or (2). She notes that she visited the minor children regularly and insists that she "substantially completed" her court-ordered case plan. Respondent points to evidence that she had been living with her cousin for approximately one year at the time of the hearing, had applied for housing with the Zebulon Housing Authority, and had maintained six months of stable employment before her employer went out of business in January of 2007. She further avers that she completed a parenting class and the women's group pre-treatment component of her substance abuse treatment, attended substance abuse counseling and AA/NA meetings, and made six unsuccessful attempts to telephone her mental health therapist.
Upon review of an order terminating parental rights, this Court must determine (1) whether the trial court's findings of fact are supported by clear, cogent and convincing evidence, and (2) whether the court's findings of fact support its conclusion of law that one or more statutory grounds for termination exist. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000); see also N.C. Gen. Stat. § 7B-1111(a). It is the province of the trial judge to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." In re Whisnant, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984). Because respondent has not brought forward her three assignments of error challenging the court's individual findings of fact, we are bound by the findings for purposes of our review. Koufman v.Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991); see also N.C.R. App. P. 28(b)(6). Accordingly, we only need to determine whether the court's findings of fact support its conclusions that grounds for termination exist under N.C. Gen. Stat. § 7B-1111(a)(1), (2). In re Beasley, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001). Moreover, we note that "[t]he finding of any one of the grounds is sufficient" to order termination.In re C.L.C., 171 N.C. App. 438, 447, 615 S.E.2d 704, 709 (2005) (quoting Owenby v. Young, 357 N.C. 142, 145, 579 S.E.2d 264, 267 (2003)).
A court may terminate parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), if it finds that the parent has "neglected the juvenile." The Juvenile Code defines "neglect," inter alia, as the denial of "proper care, supervision, or discipline" to the juvenile, or exposure of the juvenile "to an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15). In order to satisfy N.C. Gen. Stat. § 7B-1111(a)(1), the evidence must show actionable neglect at the time of the termination hearing. In re Beasley, 147 N.C. App. 399, 404, 555 S.E.2d 643, 646 (2001) (quoting In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997)). Where a child has been placed outside of the parent's care for a significant period prior to the hearing, "a trial court may find that grounds for termination exist upon a showing of a history of neglect by the parent and the probability of a repetition of neglect." In re L.O.K., 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (internal quotation omitted). In addition to noting respondent's consent to the prior adjudication of neglect entered on 10 November 2005, the district court found that WCHS "has substantiated three reports of neglect regarding [her] minor children" since 1995. The court made additional findings regarding respondent's conduct since WCHS gained custody of her children in September 2005, as follows:
20. That the mother . . . . was diagnosed with Cannabis Dependence and dysthymic disorder. She was referred for a psychiatric evaluation, but did not follow through and have the evaluation. [She] was referred to begin individual therapy with Lynn Prior in May of 2006. She met with Lynn Prior on one occasion but did not meet with her again. [She] stated that she made attempts to contact Lynn Prior, but not until after . . . the Court ordered that reunification efforts with her cease. [She] presented a log of phone calls to Lynn Prior, which does not appear to be a reliable document. Even if the court relied on the document, [she] has not presented sufficient evidence to show that she has made a sincere effort to engage in recommended therapy.
21. That the mother had a substance-abuse assessment . . . . [and] was diagnosed with marijuana dependence and use of cocaine. She completed the Women's Pretreatment Group, but continued to test positive for marijuana use . . . . Pat Van Scoy recommended the mother meet with her for individual counseling sessions. The mother attended only 7 of a possible 18 individual therapy appointments . . . .
22. That the mother was referred to a relapse group with Pat Van Scoy, but her attendance for the group sessions was sporadic . . . . She was dropped from the rolls as required by the program during [a] long period of absence . . . .
23. That the mother was to attend two NA/AA sessions per week, but she did not regularly attend these sessions. [She] presented to the Court a log of attendance . . . from August 15, 2006 through February 1, 200[7]. The Court questions the reliability of the document, but even if [it] were reliable[,] . . . . [s]he did not begin to attend until August 15, 2006 and did not consistently attend two weekly sessions as required.
24. That after the child[ren were] removed from the mother's care she continued to have positive drug screens each time the test was actually completed, including those taken on 12/21/05, 12/27/05, 3/20/06, 4/27/06, 5/18/06, 7/28/06, 8/21/06, and 2/2/07. All the tests were positive for marijuana use and the 4/27 test was also positive for cocaine. . . .
25. That the mother has not made progress in her drug rehabilitation.
26. That the mother has not obtained or maintained stable housing . . . . [She] had several addresses until she moved in with a cousin sometime in November 2005. [She] testified that she has lived there consistently since then, however the mother gave her address as something different . . . to the social worker in February 2007. The mother states that this is her present boy friend's address where she stays overnight on occasion. The mother stated that she has been on a waiting list for housing since November of 2005.
27. That the mother has had one job since the children were removed from her custody. She began employment . . . in July, 2006, 7 months after the children were taken into custody. The company closed in January, 2007 and the mother stated she is seeking new employment, but has not been successful as yet.
. . . .
29. That the mother has done some of [the] things required by [WCHS] and the Court . . . but has not made significant progress . . . . She still tests positive for illegal drugs, has not obtained stable housing, has not shown any progress in substance abuse treatment . . . and has yet to engage in mental health therapy. . . .
30. That the children have been adjudicated as neglected children and it appears likely that the neglect on the part of the mother would continue if the children were placed in her care.
The court acknowledged that respondent completed a parenting class, paid child support, and "had quality visits with her children whom she loves[.]" While noting that respondent made "substantial progress toward reunification in the first half of 2006," the court found that respondent's progress stalled when she "stopped going to therapy visits on a consistent basis." Given respondent's history of "inconsistent parenting since 1995" and her failure to address the causes of the 10 November 2005 adjudication, the court found that "it does not appear she will be able to provide a safe home for the children within a reasonable time."
We conclude the facts found by the court are sufficient to establish grounds for termination under N.C. Gen. Stat. § 7B-1111(a)(1). Notwithstanding her apparent love for the children, respondent failed to participate meaningfully in her court-ordered substance abuse and mental health treatment. The findings reflect her unbroken series of positive drug tests from December of 2005 to February of 2007, as well as her failure to obtain the psychiatric evaluation required for treatment of her psychological diagnoses. Respondent never obtained independent housing, and her claim of living consistently in her cousin's home was belied by her own representations to the social worker. She had been employed for only six months since 10 November 2005, and was unemployed at the time of the hearing. When paired with the prior adjudication of neglect entered on 10 November 2005 and the additional reports of neglect substantiated by WCHS since 1995, these facts support the district court's finding of a probability of future neglect if the children were returned to respondent's care.
Since we upheld the district court's adjudication of neglect under N.C. Gen. Stat. § 7B-1111(a)(1), we need not address the second ground for termination found by the court under N.C. Gen. Stat. § 7B-1111(a)(2). In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990); In re Moore, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982),appeal dismissed, 459 U.S. 1139, 74 L. Ed. 2d 987 (1983).
The record on appeal includes additional assignments of error which are not addressed by respondent in her appellant's brief. We deem these assignments of error abandoned pursuant to N.C.R. App. P. 28(b)(6).
Affirmed.
Judges GEER and STEPHENS concur.
Report per Rule 30(e).