IN THE MATTER OF: O.D.D. and D.J.D.
No. COA08-1431.
Court of Appeals of North Carolina.
Filed April 21, 2009.
This case not for publication
Baddour, Parker & Hine, P.C., by James W. Spicer, III, for petitioner-appellee Wayne County Department of Social Services.
Betsy A. Wolfenden for respondent-appellant mother.
Pamela Newell Williams for guardian ad litem.
ELMORE, Judge.
Respondent appeals from the district court's orders terminating her parental rights to her ten-year-old daughter, O.D.D., and her seven-year-old son, D.J.D. After careful review, we affirm.
On 27 October 2000, the Wayne County Department of Social Services (DSS) filed juvenile petitions alleging that O.D.D., then age three, and D.J.D., then age two-and-a-half months, were neglected and dependent juveniles. The petitions alleged that respondent was not able to provide stability and proper care for her children due to substance abuse, that she did not have a job, that she tested positive for cocaine and had a high blood alcohollevel when she gave birth to D.J.D., and that D.J.D. also tested positive for cocaine. In nonsecure custody orders dated the same day, the trial court placed the children with an aunt and uncle, respondent's brother and his wife. On 16 November 2000, the parties agreed that the children would remain with the aunt and uncle.
On 5 January 2001, the trial court adjudicated D.J.D. and O.D.D. neglected and dependent based on stipulation by the parties. Via orders, the court continued temporary custody of the children with the aunt and uncle. Respondent was allowed supervised visitation in the discretion of the aunt and uncle. Respondent was ordered to, among other things, complete substance abuse treatment and comply with all recommendations. The trial court continued custody with the aunt and uncle in three subsequent review orders.
The trial court held a permanency planning hearing on 8 November 2001. In orders entered 11 December 2001, the trial court found that respondent had not complied with previous court orders. The court kept custody of D.J.D. and O.D.D. with the aunt and uncle and designated them as guardians for the children. Further, the court ceased visitation with respondent and directed her to file a motion with the court if she desired visitation or custody in the future. Finally, the court found no need for further review of the matter, removed it from the active calendar, and relieved respondent's counsel and the guardian ad litem (GAL).
On 23 May 2006, DSS filed motions for review based on two reports DSS had received about the children's living conditions. On 24 May 2006, DSS filed juvenile petitions alleging that O.D.D., then age eight, and D.J.D., then age five, were neglected and dependent. The motions for review and juvenile petitions alleged that DSS received reports that the aunt and uncle were not providing D.J.D. and O.D.D. with proper clothing, food, or education; that the aunt and uncle beat the children; that the uncle was using drugs; and that an older male was living in the home and had tried to molest O.D.D. DSS entered into a safety assessment with the aunt and uncle on 21 April 2006, but they failed to follow through and ultimately violated the safety assessment. Finally, DSS alleged that the aunt and uncle were allowing the children to have unsupervised and overnight visitation with respondent, a violation of the trial court's 11 December 2001 orders.
In nonsecure custody orders entered 23 May 2006, the trial court gave DSS custody of O.D.D. and D.J.D., who were then placed in foster care. In three subsequent review orders, the trial court continued custody with DSS, gave respondent supervised visitation conditioned on negative drug screens, and ordered respondent to comply with various directives related to her substance abuse and lack of a stable environment for the children. The trial court held a review hearing on 12 April 2007; respondent failed to attend. Following the hearing, on 23 April 2007, the court entered an order in which it found that respondent failed to comply with previous court orders; failed to contact her attorney, the GAL, and DSS; and had been held in contempt for failing to attend Family Drug Treatment Court as ordered. The court also found that respondent had recently given birth to another child. The court kept custody of D.J.D. and O.D.D. with DSS and ordered respondent to comply with several directives related to substance abuse treatment. On 6 June 2007, the trial court continued custody with DSS and kept reunification as the permanent plan.
The trial court held a permanency planning hearing on 6 September 2007, and, in orders entered 4 October 2007, the court changed the permanent plan from reunification to adoption and termination of parental rights. In the orders, the trial court also found that respondent was in prison. On 19 December 2007, DSS filed petitions to terminate respondent's parental rights to O.D.D. and D.J.D. on the ground of neglect.
The termination proceeding came on for hearing on 17 April 2008. At the hearing, respondent informed the trial court that she did not want representation from her court-appointed attorney and would hire her own attorney instead. Respondent signed a waiver of appointed counsel form on the same date, and the trial court continued the hearing until 12 June 2008 in order for respondent to retain counsel.
The case came on for hearing a second time on 12 June 2008. Before any witnesses testified, the trial court dismissed respondent's retained counsel from the case due to a possible conflict of interest. The trial court then informed respondent of her three options: reapply for a court-appointed attorney, retain another attorney, or handle the hearing herself. Respondent chose to proceed with the hearing herself, waiving her right to appointed counsel a second time.
Two social workers testified on behalf of DSS at the termination hearing. Respondent testified on her own behalf, and she also called two employees from the Passage Home program in Raleigh. The trial court concluded that the ground of neglect existed to terminate respondent's parental rights to O.D.D. and D.J.D. The trial court also terminated the parental rights of the purported and/or unknown father of O.D.D. and of any unknown father of D.J.D. The trial court then concluded that it was in the children's best interest to terminate respondent's parental rights to the children. Respondent gave timely notice of appeal from the orders.
The trial court's undisputed findings of fact from the termination orders establish, inter alia, the following factual background. O.D.D. and D.J.D. were removed from respondent's custody in 2000 due to her substance abuse, and the children have been living with relatives and foster parents since that time. Respondent, now thirty-three, began using illegal drugs when she was sixteen or seventeen. Although she has stopped using drugs at times, she has relapsed twice. Aside from O.D.D. and D.J.D., who are the subject of this action, respondent has four other children: J.D., who is seventeen years old and in the custody of DSS; T.D., who is fifteen years old and has lived with an aunt since birth; M.D., who is fourteen years old and attending Camp Eckerd as aresult of a juvenile delinquency proceeding; and J.D., who is one year old and lives with respondent.
Respondent entered prison in June or July 2007 after turning herself in for a probation violation. The underlying offense was a controlled substance offense, and the violation was for writing bad checks. Upon her release from prison, respondent was accepted into Passage Home, which is a two-year program for women leaving prison. The program provides respondent with a condominium and support services to reenter the community, but requires respondent to take random drug tests and remain drug free to stay in the program. Respondent must also maintain a job and pay $300.00 per month to the program. Of this amount, $200.00 pays for program costs, and $100.00 goes into savings for respondent. Since entering the program, respondent has remained drug free. She also has a full-time job at Dunkin Donuts, working thirty to thirty-two hours per week, and has a part-time cleaning job. Respondent also receives food stamps and daycare vouchers for her one-year-old child living with her. She has had some supervised visitation with O.D.D. and D.J.D. since her release from prison.

I.
In her first argument on appeal, respondent contends that the trial court committed reversible error by discharging respondent's retained counsel without appointing substitute counsel or continuing the termination hearing until she retained new counsel. Respondent assigns error to several findings of fact in connection with the argument. We review the trial court's findings of fact to determine whether they are supported by clear, cogent, and convincing evidence. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000).
Findings of fact 10-12[1] outline the court's reason for discharging respondent's retained counsel:
10. That at the call of the case Marsha Mitchell-Hamilton informed the Court that she had been contacted on the prior day, but had not been paid to represent [respondent].
11. That one of the petitioner's witnesses, a former social worker who was involved in this case, is now employed by Marsha Mitchell-Hamilton and the petitioner objected to Marsha Mitchell-Hamilton representing [respondent] in this matter because she employed the witness for the petitioner.
12. That Marsha Mitchell-Hamilton informed the mother that she would not be able to represent her.
Respondent contends that these findings are not supported by the evidence. We agree.
At the beginning of the hearing on 12 June 2008, the trial court noted the potential conflict, stating the following:
Ms. Hamilton has spoken to me . . . because there seems to be a possible conflict. I've told her that I do not feel it would be appropriate for her to handle the case. You can either apply for another attorney; you canhandle it yourself; or, you can hire another attorney.
However, this is the extent of the trial court's explanation of the nature of the conflict. Neither the transcript nor the record on appeal contain any evidence that Ms. Mitchell-Hamilton had not been paid to represent respondent, that DSS objected to Ms. Mitchell-Hamilton's representation, that Ms. Mitchell-Hamilton employed a witness for DSS, or that Ms. Mitchell-Hamilton informed respondent that she could not represent respondent. Therefore, we agree that these findings are not supported by clear and convincing evidence.
Nonetheless, findings of fact 10-12 are unnecessary to our determination of whether the trial court erred by discharging Ms. Mitchell-Hamilton without appointing replacement counsel or continuing the hearing. "It is well established that a `parent has the right to counsel and to appointed counsel in cases of indigency unless the parent waives the right.'" In re R.R., 180 N.C. App. 628, 636, 638 S.E.2d 502, 507 (2006) (quoting N.C. Gen. Stat. § 7B-1101 (2005)). Further, if a parent is not represented by counsel at a termination hearing, the trial court has a statutory obligation to inquire into the parent's desire for counsel: "In the event that the parents do not desire counsel and are present at the hearing, the court shall examine each parent and make findings of fact sufficient to show that the waivers were knowing and voluntary." N.C. Gen. Stat. § 7B-1109(b) (2007). In the instant case, respondent knowingly and voluntarily waived her right to appointed counsel on two separate occasions. We first note that respondent had appointed counsel for several years. Kevin MacQueen represented respondent in the juvenile proceedings from 2000 to 2001, and was appointed a second time in 2006, after DSS filed a motion for review. However, respondent terminated Mr. MacQueen's representation and knowingly waived her right to counsel on 17 April 2008. Indeed, she signed a "Waiver of Parent's Right to Counsel" form, which states the following:
I am the parent of the juvenile named above. I have been told that I have the right to have a lawyer represent me. I have been told of my right to have a lawyer appointed by the Court if I cannot afford to hire one. With full knowledge of these rights, I knowingly, willingly, and understandingly choose as follows:
. . . I do not want a court-appointed lawyer. I will hire my own lawyer at my own cost.
Respondent was aware that she needed to retain counsel for the hearing, which was rescheduled for 12 June 2008. Thus, we find that respondent's original waiver was knowing and intelligent.
Moreover, respondent voluntarily choose to proceed with the hearing pro se after the trial court discharged Ms. Mitchell-Hamilton. The trial court twice explained to respondent that she had three options with respect to counsel: hire another attorney herself, re-apply for another court-appointed attorney, or handle the case herself. Respondent indicated that she wished to handle the case herself. Therefore, we find that respondent's second waiver was also knowing and intelligent. Because respondent voluntarily chose to proceed with the hearing, the trial court didnot commit error when it discharged Ms. Mitchell-Hamilton without appointing replacement counsel or continuing the hearing. Although findings of fact 10-12 were not supported by the evidence, the remaining findings of fact regarding this issue, numbers 2-9 and 13-15, reflect respondent's knowing and voluntary waiver of counsel. Thus, the trial court made no error by not appointing counsel or continuing the hearing.

II.
Next, we turn to respondent's argument that the trial court erred in terminating her parental rights based upon the ground of neglect. A trial court may terminate parental rights upon a finding of one of the ten enumerated grounds. N.C. Gen. Stat. § 7B-1111(a) (2007). On appeal, we review the trial court's orders to determine "whether the trial court's findings of fact were based on clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental termination should occur . . . ." In re Oghenekevebe, 123 N.C. App. 434, 435-36, 473 S.E.2d 393, 395 (1996) (citation omitted). "So long as the findings of fact support a conclusion [that one of the enumerated grounds exists], the order terminating parental rights must be affirmed." In re Humphrey, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) (quotation and citation omitted).
As an initial matter, we note that although respondent assigned error to several findings of fact relevant to this argument, she did not argue them in her brief. Respondent broadly argues that some of the findings improperly shifted the burden ontoher, but as discussed below, we reject this argument. Furthermore, we have previously held that "[a] broadside exception . . . does not present for review the sufficiency of the evidence to support the entire body of the findings of fact." In re Beasley, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001) (internal citation omitted). "Instead, the trial court's findings of fact are binding on appeal, and we are left to determine whether the trial court's findings support its conclusion of law." Id.
The trial court concluded that termination of respondent's parental rights was justified because D.J.D. and O.D.D. were neglected by respondent. North Carolina General Statute § 7B-1111 lists neglect as one of the grounds for terminating parental rights and provides, in pertinent part:
(a) The court may terminate the parental rights upon a finding of one or more of the following:
(1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be . . . neglected if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101.
N.C. Gen. Stat. § 7B-1111(a)(1) (2007). Neglect, in turn, is defined as follows:
Neglected juvenile.  A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2007).
However, when a child has not been in the custody of a parent for a significant amount of time prior to the termination hearing, as is the case here, "the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect." In re Shermer, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003) (citing In re Pierce, 146 N.C. App. 641, 651, 554 S.E.2d 25, 31 (2001), aff'd, 356 N.C. 68, 565 S.E.2d 81 (2002)). Because the determinative factor is the parent's ability to care for the child at the time of the hearing, we previously have explained that "requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible." Id. at 286, 576 S.E.2d at 407 (citing In re Ballard, 311 N.C. 708, 714, 319 S.E.2d 227, 232 (1984)). "Thus, the trial court must also consider evidence of changed conditions . . . ." Id. The trial court may then "find that grounds for termination exist upon a showing of a `history of neglect by the parent and the probability of a repetition of neglect.'" In re L.O.K., 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting Shermer, 156 N.C. App. at 286, 576 S.E.2d at 407). Respondent contends that the trial court did not properly consider evidence of her changed circumstances and the likelihood of future neglect. We disagree.
The findings of fact establish that O.D.D. and D.J.D. were adjudicated neglected in 2001 and that respondent has failed to provide care for them since they were removed from her custody in 2000. Respondent has had substance abuse problems for approximately fifteen years, and D.J.D. was born with cocaine in his system. Although respondent has recently been drug free and is attempting to put her life back on track, the trial court found a likelihood of future neglect based on her long history of substance abuse. The following findings of fact specifically address respondent's changed circumstances and likelihood of future neglect:
59. That the mother has neglected [the] juvenile and continued to neglect the juvenile for many years while the juvenile was living with family members in foster care.
60. That although the mother seems to have gotten herself together and is able to care for a one year old child with complete wrap around support, the Court finds that there is a likelihood that the mother would again neglect this juvenile when she does not have the full wrap around support that she now has.
61. That the mother will not remain in this program forever and the Passage Home [is] a voluntary program and the mother could leave at any time.
62. That the mother has had at least two previous relapses for substance abuse use and it is not uncommon for substance abuse users to have relapses.
We reject respondent's argument that these findings of fact improperly shifted the burden of proof. Indeed, these findings accomplish exactly what Shermer required the trial court to do: make findings regarding likelihood of future neglect.
We conclude that these findings of fact are sufficient to establish the likelihood of future neglect. As discussed throughout this opinion, the trial court also made sufficient findings of fact to demonstrate that the children had been neglected in the past. Together, all the findings of fact support the conclusion that respondent neglected the children by failing to provide proper care, supervision, and discipline for O.D.D. and D.J.D. Accordingly, we find that the trial court did not err in concluding that grounds existed to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). These assignments of error are overruled.
Affirmed.
Judges STEELMAN and GEER concur.
Report per Rule 30(e).
NOTES
[1] The trial court entered two separate orders terminating respondent's parental rights: one terminating her parental rights to D.J.D. and one terminating her parental rights to O.D.D. The two orders are nearly identical in substance, with any major differences being attributed to the differences between the two juveniles. All findings pertinent to this opinion are identical in both orders. Unless otherwise indicated, our references to the findings of fact include both orders.