638 S.E.2d 502 (2006)
In re R.R., a minor child,
New Hanover County Department of Social Services, Petitioner,
v.
B.F., Respondent.
No. COA06-122.
Court of Appeals of North Carolina.
December 19, 2006.
Dean W. Hollandsworth, Wilmington, attorney for petitioner-appellee.
Lisa Skinner Lefler, Wilmington, attorney for respondent-appellant.
Regina Floyd-Davis, Wilmington, attorney for guardian ad litem-appellant.
ELMORE, Judge.
Respondent B.F. appeals the district court's order terminating his parental rights as the father of R.R. After careful review, we affirm the order of the trial court.
The child, R.R., was born on 16 November 2002, at which time both she and her mother, H.R., tested positive for cocaine. H.R. admitted to "freebasing" cocaine for a few days prior to going into labor and delivering R.R. The child has been in the legal and physical custody of petitioner, New Hanover County Department of Social Services, since 18 November 2002. The mother stated that the child resulted from being pregnant after a sexual assault by an unknown man whose identity has never been established.
*504 After R.R.'s birth, the mother left the state and made no contact with petitioner, no response to correspondence efforts from petitioner, no effort to regain custody of her daughter, and no inquiry as to her daughter's well being. On 10 July 2003, the district court ordered that the permanent plan be changed from reunification with the mother to adoption. In its July, 2003 order, the district court stated that B.F., H.R.'s "significant other," had contacted petitioner to assert his possible paternity of the child, requesting a paternity test. Petitioner "encouraged him to re-contact the social worker when he moved to the Durham area and had secured housing. He was instructed at that time that once he could provide a stable address, he could be served for Court." The trial court did not hear from B.F. again prior to issuing its order.
By 13 November 2003, the date of a periodic review before the district court, R.R.'s birth certificate had been amended to include B.F. as the named father. Apparently this amendment was made with the mother's cooperation. B.F. had met with the mother and R.R.'s social worker while the mother was incarcerated and stated that he wanted to have a paternity test to determine whether he was R.R.'s father, but that he could not afford to pay for the test himself. As a result of this statement, the district court judge ordered B.F. to undergo a paternity test paid for by petitioner.
By the next hearing on 29 January 2004, B.F. and H.R. were married and living together in Tennessee. B.F. had not taken the paternity test. The district court judge found that he had "told a social worker outside of the courthouse that he did not intend to complete the testing if he was not given a court appointed attorney" and that he had "not been in contact with the Department [of Social Services] since leaving the last court hearing without obtaining paternity testing." The court ordered B.F. to take a paternity test if he "desire[d] to participate in this matter."
On 14 July 2004, petitioner filed a Petition for Termination of Parental Rights pursuant to North Carolina General Statute section 7B-1100, which was granted on 23 May 2005. It is from this order that respondent appeals. The district court's findings, in relevant part, include:
4. The Court finds as a fact that Bradley F. is most likely not the father of this child due to the fact that he is Caucasian and the child is bi-racial. He failed and refused to submit to a paternity test when ordered previously to do so and this circumstance leads the Court to find that he fears the result of this test will disprove his assertion of paternity.
5. The Respondent-Parents have neglected the child within the meaning of G.S. § 7B-101 due to the fact that the Respondent-Mother and child both tested positive for cocaine at the time of the child's birth. . . . The purported biological father, Bradley F., refused to comply with the Court Order of November 13, 2003 to submit to paternity testing. The unknown father, whom the Respondent-Mother stated was a man who sexually assaulted her, has never had any contact with the child. In light of the Respondent-Parents' lack of compliance with any Court Orders and family services case plans during the history of this matter, the likelihood of repetition of neglect is strong.
6. The Respondent-Parents have willfully, and not due solely to poverty, left the child in foster care for more than twelve months without showing to the satisfaction of the Court that reasonable progress under the circumstances was made to correct the conditions which led to the child's removal. None of the Respondent-Parents have complied with any Court Orders or family services case plans which would be necessary to establish reasonable progress in obtaining substance abuse treatment, parenting classes and mental health treatment. None of the Respondent-Parents have seen the child since shortly after birth, nor participated in any of the activities needed to establish a safe home for her placement.
7. The Respondent-Parents have willfully failed to pay any amount toward the reasonable cost of care of the child for a period exceeding six continuous months prior to the filing of the Petition. The *505 Respondent-Parents have been physically and financially able to do so except for any period of incarceration.
. . .
9. The Respondent-Parents have willfully abandoned the child for at least six consecutive months immediately prior to the filing of the petition. None of the Respondent-Parents has seen or visited with the child since her removal on November 18, 2002, shortly after her birth on November 16, 2002. . . . The purported biological father, Bradley F., refused paternity testing and has never seen the child. . . . These circumstances lead the Court to find that a willful abandonment of this child by the Respondent-Parents is evident.
The district court terminated respondent's parental rights on the grounds of neglect, N.C. Gen.Stat. § 7B-1111(a)(1) (2005), willfully abandoning the child "for at least six consecutive months immediately preceding the filing of the petition," N.C. Gen.Stat. § 7B-1111(a)(7) (2005), and willfully leaving the child in foster care for more than twelve months "without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions" which led to the child's removal, N.C. Gen.Stat. § 7B-1111(a)(2) (2005).
Respondent appealed the order terminating his parental rights citing the following errors: (I) the trial court failed to make proper inquiry and findings of fact concerning B.F.'s paternity of the child; (II) the trial court made findings of fact not supported by the evidence that grounds existed to terminate the father's rights, that the evidence did not support a finding that the best interests of the child were served by terminating respondent's parental rights and the written order reflecting that the trial court made all the proper findings and conclusions was in error; (III) the trial court failed to appoint counsel to respondent; and (IV) the trial court lacked jurisdiction to hear this termination proceeding because of failure to comply with statutorily mandated time lines.

I.
Respondent first contends that the trial court erred by not making further inquiry into the status of his paternity. The court ordered respondent to take a paternity test, which he refused. Respondent instead married the mother, intending to meet the statutory requirements of legitimation by subsequent marriage. N.C. Gen.Stat. § 49-12 (2005). The statute provides that "[w]hen the mother of any child born out of wedlock and the reputed father of such child shall intermarry" the child shall be deemed to be the product of the mother and reputed father. Id. While we acknowledge that respondent has met the statutory requirements for legitimation, such legitimacy is not at issue here. The Petition for Termination of Parental Rights does not allege that that respondent failed to establish paternity, nor does the Order on Termination of Parental Rights rely on the lack of paternity as grounds for termination. The termination order does state that "[t]he unknown father has taken none of the statutorily mandated steps to establish paternity or legitimize the child prior to the filing of the petition," but is clearly not referring to respondent because he is listed separately from the unknown father in the definition of "Respondent-Parents." Regardless, this failure to establish paternity is listed as the fifth grounds for termination of parental rights. A single ground for termination is all that is required for proper termination. In re B.S.D.S., 163 N.C.App. 540, 546, 594 S.E.2d 89, 93-94 (2004). The trial court rightly determined that, regardless of paternity, there were sufficient ground to terminate the parental rights of H.R., B.R., and the unknown father. As respondent's possible paternity did not constitute a grounds for termination, the trial court committed no reversible error by making no further inquiry.

II.
In a termination of parental rights case, the standard of review is a two-part process: (1) the adjudication phase, governed by North Carolina General Statute section 7B-1109; and (2) the disposition phase, governed by North Carolina General Statute *506 section 7B-1110. Whittington v. Hendren (In re Hendren), 156 N.C.App. 364, 366, 576 S.E.2d 372, 375 (2003). During the adjudication phase, petitioner must prove by clear, cogent, and convincing evidence that one or more of the statutory grounds set forth in section 7B-1111 for termination exists. N.C. Gen.Stat. § 7B-1109(e)-(f); In re Hendren, 156 N.C.App. at 366-67, 576 S.E.2d at 375. This court must now determine whether the trial court's findings are supported by clear, cogent and convincing evidence and, if so, whether the findings support the conclusions of law. In re Hendren, 156 N.C.App. at 367, 576 S.E.2d at 375. We find that they do and they are.
In his second assignment of error, respondent cites at least seven problems with the court's findings, which, for ease of discussion we will condense into four sub-issues: (1) did petitioner present clear, cogent, and convincing evidence supporting at least one ground for termination of parental rights; (2) did the trial court abuse its discretion in its determination that terminating B.F.'s parental rights was in the child's best interest; (3) did the trial court fail to state the proper burden of proof and make the findings of fact set out in the written order; and (4) did the trial court fail to make findings of fact found in the termination order.
First, petitioner presented clear, cogent, and convincing evidence supporting several grounds for termination of parental rights. As only one ground is necessary for termination of parental rights, we focus on respondent's wilful abandonment of the child. Although the statute requires only that respondent wilfully abandoned the child for six months prior to the adjudication, petitioner testified that respondent had, at most, only seen the child immediately after her birth. At the time of the termination proceeding, the child was nearly three years old. Although respondent appears to argue that he did not willfully abandon the child because he was not given the opportunity to participate in the child's life, this court has held that "[a]lthough his options for showing affection [were] greatly limited, the respondent will not be excused from showing interest in the child's welfare by whatever means available." Id. at 368, 576 S.E.2d at 376. We again acknowledge that respondent did attempt to legitimize the child through marriage and amendment of the child's birth certificate, but execution of these legal formalities does not adequately replace the presence, love and care of a parent-delivered by whatever means available.
Second, the trial court did not abuse its discretion by terminating respondent's parental rights. It is within the district court's discretion to terminate parental rights upon a finding that it would be in the best interest of the child. In re Blackburn, 142 N.C.App. 607, 613, 543 S.E.2d 906, 910 (2001). The district court's decision to terminate parental rights is reviewed under an abuse of discretion standard. In re Nesbitt, 147 N.C.App. 349, 352, 555 S.E.2d 659, 662 (2001). Here, the district court determined that it was in the child's best interest to terminate respondent's parental rights, and given the circumstances, we cannot find that the district court abused its discretion. The child has been in foster care since birth and is now four years old. She has never met her mother or respondent, and her foster parents are prepared to adopt her immediately following adjudication of this case. Respondent and the mother appear to have, at best, an "on again off again" relationship, which cannot offer stability to the child. Indeed, if the child were given over to respondent's care, she would live with her birth mother, who has also been determined to be an unfit parent. The district court found, and we agree, that it is in the child's best interest to have respondent's parental rights terminated and her permanent plan changed to adoption.
Third, respondent claims that the trial court failed to state the proper burden of proof by stating that it had found "sufficient" evidence to terminate respondent's parental rights, rather than "clear and convincing evidence" as required by North Carolina General Statute section 7B-1111. This Court would disagree with respondent, but need not reach that conclusion because respondent did not preserve this issue for appeal by including it in his assignments of error. This issue is deemed waived in accordance with *507 Rule 10(a) of the North Carolina Rules of Appellate Procedure.
Fourth, respondent contends the trial court failed to make findings of fact found in the termination order and instead "merely recit[ed] allegations made in the petition." Respondent relies on In re Harton, 156 N.C.App. 655, 577 S.E.2d 334 (2003), arguing that this case requires the trial court to "find the ultimate facts" upon which the court's conclusions rely. Again, we must disagree with respondent. Harton relates to findings of fact in permanency planning hearings, not termination of parental rights hearings. Id. at 660, 577 S.E.2d at 337. We have held "there is no requirement . . . that the court orally state `with particularity' the exact terms of disposition" so long as there is valid evidence in the record to support such findings of fact. In re Brim, 139 N.C.App. 733, 739, 535 S.E.2d 367, 370 (2000). Here, the findings of fact in the termination order are adequately supported by testimony given during the termination proceeding.

III.
Respondent argues the trial court committed reversible error when it did not appoint counsel for him. We hold the trial court committed no such error, and respondent's unfortunate lack of counsel is the result of his own failure to follow the plain instructions that appeared on the summons and petition, for which respondent personally signed nearly three months before the court date.
The "Summons In Proceeding for Termination of Parental Rights" states:
You have a right to be represented by a lawyer in this case. If you want a lawyer and cannot afford one, the Court will appoint a lawyer for you. You may contact the Clerk of Superior Court immediately to ask for a court appointed lawyer.
The summons also states, "If you do not file a written answer to the attached petition with the Clerk of Superior Court within thirty (30) days, the Court may terminate your parental rights." Respondent neither contacted the clerk to obtain counsel nor filed a written answer to the petition. Instead, respondent faxed a letter to petitioner requesting a continuance because he had not yet submitted the affidavit of indigency and could not appear at the hearing on the assigned date.
It is well established that a "parent has the right to counsel and to appointed counsel in cases of indigency unless the parent waives the right." N.C. Gen.Stat. § 7B-1101. "[T]he General Assembly did not intend to allow for waiver of court appointed counsel due to inaction prior to the hearing. . . . [I]f the parent is present at the hearing . . . and does not waive representation, counsel shall be appointed." Little v. Little, 127 N.C.App. 191, 192-93 487 S.E.2d 823, 825 (1997) (internal quotations omitted). Respondent's situation cannot fit within the broad limits of Little because respondent simply was not present at court. His inaction prior to the hearing and his failure to appear at the hearing constitute a waiver of his right to counsel, and the trial court made no error by not appointing counsel to him.

IV.
In his fourth and final argument, respondent contends the termination order should be reversed because of the delay between petitioner's issuance of the petition to terminate on 29 July 2004 and the termination hearing on 25 April 2005. North Carolina General Statutes section 7B-1109(a) requires that the termination hearing be conducted "no later than 90 days from the filing of the petition or motion unless the judge . . . orders that it be held at a later time." In addition to showing that the trial court failed to meet the timeliness requirement of the statute, respondent must show that he was prejudiced by that delay. In re S.W., ___ N.C.App. ___, 625 S.E.2d 594, 596 (2006). This court has held that delays of this nature do not warrant reversal "where there is ample evidence on multiple grounds to terminate respondent's rights." See In re D.J.D., D.M.D., S.J.D., J.M.D., 171 N.C.App. 230, 244, 615 S.E.2d 26, 35 (2005) (referring to an additional delay of 44 days by the trial court, followed by a delay of 68 days requested by respondent).
*508 Respondent is correct that the hearing in this matter did not comply with the statute, and that the delay is well in excess of the 90 day requirement. However, respondent fails to establish that this delay rises to the level of prejudicial delay. Respondent refers to his deprivation of any "chance at being a father to his daughter until the trial court heard the case." It appears that when the petition was issued, the address for respondent that petitioner had on file was not the address at which he could be located. Petitioner states that the long delay was the result of petitioner's inability to serve process on respondent and the mother. Indeed, petitioner eventually issued notice by publication to the mother and unknown father. Regardless of the reason, there is no record of communication between respondent and petitioner regarding the well being of the child or the status of respondent's paternity during the time period between issuance of the petition and the termination hearing. It is this lack of communication that leads this Court to believe that respondent was not prejudiced by the delay.
For the foregoing reasons, we hold that the trial court did not err in terminating respondent's parental rights.
Affirmed.
Chief Judge MARTIN and Judge JACKSON concur.