IN RE: T.J.M., A Minor Juvenile.
No. COA07-357
Court of Appeals of North Carolina.
Filed August 21, 2007
This case not for publication
Stephen M. Schoeberle, for petitioner-appellee Burke County Department of Social Services.
The Turrentine Group, PLLC, by Karlene Scott-Turrentine, for respondent-appellant father.
ELMORE, Judge.
On 23 September 2003, the Burke County Department of Social Services (DSS) filed a juvenile petition alleging that the minor child, T.J.M., and a minor sibling not a party to this appeal, were dependent and neglected. In the petition, DSS alleged that the juveniles were neglected on the grounds that they were present during a domestic violence incident that occurred between the mother of T.J.M. (respondent-mother) and respondent-mother's boyfriend (Mr. Bennett), and that T.J.M. was struck in the eye by Mr. Bennett during the altercation. The petition further alleged that while respondent-mother had signed a safety agreement whereby she agreed not to allow further contact between T.J.M. and Mr.Bennett, respondent-mother subsequently violated the agreement. The petition additionally alleged that the children were dependent because they were left without appropriate childcare when Mr. Bennett was arrested for misdemeanor child abuse and respondent-mother was arrested for failure to appear on other charges.
On 25 September 2003, the trial court gave DSS non-secure custody of the children. In its order granting non-secure custody, the trial court noted that respondent-appellant father, T.J.M.'s biological father (respondent), had not yet been served with the juvenile petition. However, respondent was thereafter served on 15 October 2003.
On 20 November 2003, the trial court conducted a hearing on the juvenile petition. On 26 November 2006, the trial court entered an adjudication and disposition order adjudicating the children as dependent and neglected. With respect to respondent, the trial court found that respondent and respondent-mother were involved in a thirteen-year abusive relationship, that respondent-mother had a long history of substance abuse, and that T.J.M. was born with cocaine in his system. The trial court also found that Mr. Bennett had met respondent and respondent-mother "at a drug house" where "they used cocaine and alcohol and all participated in sexual acts while [T.J.M.] was present and asleep on the floor." The trial court further found:
7. [Respondent] was located with the help of the authorities in Florida. It is reported that he has been drunk every night in a motel, had a fight with a woman there and damaged a phone in the room during that fight. He has completed a psychological evaluation, but the results are not available yet. He has declared his intention to relocate to North Carolina.
In the disposition portion of its order, the trial court continued custody of the children with DSS and ordered respondent, respondent-mother, and Mr. Bennett to comply with the recommendations of their psychological evaluations and to submit to random drug testing at the request of DSS. The trial court also ordered weekly, supervised visitation for each parent.
In a review order entered 19 May 2004, the trial court noted that the results of respondent's psychological evaluation revealed a diagnosis of poly-substance abuse and anti-social personality disorder. Referring to this diagnosis and similar diagnoses for respondent-mother and Mr. Bennett, the trial court found that "[t]he odds are not favorable for long-term change . . . ." In addition, the trial court noted that all of the parents had "extensive histories of previous DSS involvement in their lives."
Nevertheless, the trial court found that respondent had visited regularly with T.J.M. and that the visits had "gone well." The trial court further found that respondent had maintained employment, had attended Alcoholics Anonymous (AA) meetings six to ten times per week, had tested negative in all drug screens, and that a home study of his residence revealed no safety issues. The trial court additionally found that T.J.M. suffers from a kidney disorder, which requires regular treatment and periodic hospitalization. The trial court ordered that respondent have weekly unsupervised visitation with T.J.M. In its 18 February 2005 permanency planning order, the trial court found that for a period of fourteen months respondent had maintained employment and a residence, had continued to attend AA meetings daily, and had no positive alcohol or drug tests. The trial court further found that respondent "continues to address his life-long substance abuse issues." The trial court increased respondent's unsupervised visitation period to Friday afternoon to Wednesday morning every other week. The trial court further ordered respondent not to consume alcohol or controlled substances during or within 48 hours of visitation and not to have any overnight guests or visits from women with whom he had a romantic relationship during visitation.
In a 7 April 2005 permanency planning order, the trial court found that respondent had "made significant progress in dealing with his substance abuse issues and in maintaining stability, but he is at a high risk for relapse." Nevertheless, the trial court ordered that reunification of T.J.M. with respondent should be attempted and specifically approved DSS's placement of T.J.M. with respondent.
After T.J.M. had resided with respondent for approximately eight months, DSS removed T.J.M. from the respondent's home on 6 January 2006 as the result of respondent's testing positive for cocaine. Following a review hearing on 9 February 2006, the trial court found that while respondent had made a "yeoman's effort" to address his lengthy history of substance abuse, respondent had relapsed as indicated by both the positive cocaine test and his failure to report for other drug tests. The trial court also found that respondent's "deterioration . . . coincided with his relationship with [S.T.]," whom he met at an AA meeting and who had a history of cocaine abuse. The trial court further found that respondent had been "less than forthright" about residing with S.T., and that respondent had tried to persuade T.J.M. not to disclose that respondent had consumed beer or that he had permitted T.J.M. to have contact with respondent-mother. Based on these findings, the trial court concluded that it was in T.J.M.'s best interests to cease reunification efforts.
On 25 May 2006, DSS filed a petition to terminate, and on 12 January 2007, the trial court terminated respondent's parental rights. Respondent now appeals the termination.
On appeal, this Court must determine (1) whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence, and (2) whether the findings of fact support the trial court's conclusion of law that one or more of the statutory grounds set forth in N.C. Gen. Stat. § 7B-1111 for termination exists. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000) .
We first address respondent's argument that the trial court erroneously terminated his parental rights on the ground that T.J.M. was neglected pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). For the purpose of this statute, "neglected juvenile" is defined in relevant part as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2005). In deciding whether a child is neglected for purposes of terminating parental rights, "[t]he determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the termination proceeding." In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). "Termination, however, may not be based solely on past conditions that no longer exist." In re L.O.K., 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (citation omitted). When a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, a trial court may find that grounds for termination exist upon a showing of a "history of neglect by the parent and the probability of a repetition of neglect." In re Shermer, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003) (citation omitted).
As an initial matter, we note that respondent has not assigned error to any of the specific findings of fact related to this ground for termination. Consequently, the trial court's findings of fact are binding on appeal. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."). Accordingly, our review will be limited to whether the findings support the conclusions of law. In re McMillon, 143 N.C. App. 402, 408, 546 S.E.2d 169, 174 (2001).[1]
With respect to the trial court's determination of neglect, the trial court made the following pertinent findings of fact:
3. Neither [respondent-mother] nor [respondent] are present in court today and neither has filed a responsive pleading. . . . [Respondent] has not appeared in court since June 1, 2006. He has had no contact with the Department, the guardian ad litem or his son since prior to that date. He apparently does maintain contact with his attorney, but his current address is unknown. [Respondent-mother] and [respondent] at this point apparently are indifferent to [T.J.M.] and his needs.
* * *
5. Both [respondent-mother] and [respondent] have histories of poly-substance abuse and domestic violence, and those are the primary issues that gave rise to this case. Neither is known to have completed, or currently to be receiving, treatment or counseling for those issues, therefore they are as serious today as they were on September 23, 2003, when the initial juvenile petition was filed. As a result, there is a substantial likelihood that the neglect that [the] Court found in its adjudication order of November 20, 2003, would be repeated were [T.J.M.] to be returned to either parent.
* * *
7. [Respondent] was compliant with substance abuse and domestic violence treatment until he became involved with a girlfriend, [S.T.], and subsequently tested positive for cocaine in January of 2006, resulting in the removal of [T.J.M.] from his home, the juvenile previously having been returned to [respondent]'s home on April 7, 2005. [Respondent] met [S.T.] who has a history of cocaine abuse, at an AA meeting, and his situation subsequently deteriorated. At that time, he also failed to disclose that he was residing with [S.T.] and that he had resumed consuming alcohol. In May of 2006, he was arrested for communicating threats to [S.T.].
8. Neither [respondent-mother] nor [respondent] is known to have a stable residence at this time.
Based on these findings, the trial court concluded that T.J.M. was neglected and that "due to [respondent's] failure to adequately address his substance abuse and domestic violence issues" there is a "substantial likelihood that the neglect would be repeated."
We conclude that the trial court's findings demonstrate a substantial likelihood that T.J.M. would suffer neglect were T.J.M. to be returned to respondent. Despite a significant period of improvement in respondent's long-standing substance abuse problem, respondent nevertheless suffered a relapse. More significant, however, is that this relapse occurred while T.J.M. was placed with respondent, directly demonstrating to the trial court respondent's inability to provide the proper environment for T.J.M. Further, respondent's failure to continue his participation in the proceedings or to provide the trial court with any evidence that he has taken steps to seek treatment or counseling to address the relapse is further evidence supporting the trial court's conclusion. Consequently, we hold that these findings are sufficient to establish neglect under N.C. Gen. Stat. § 7B-1111(a)(1).
Under N.C. Gen. Stat. § 7B-1111(a), the trial court need only find that one statutory ground for termination exists in order to proceed to the dispositional phase and decide if termination is in the child's best interests. In re R.R., ___ N.C. App. ___, ___, 638 S.E.2d 502, 505 (2006). Because we hold that the trial court's conclusion of neglect was proper, we need not review the other ground relied upon by the trial court. Id.
We next address respondent's contention that the trial court abused its discretion in terminating his parental rights. Once statutory grounds for termination have been established, the trial court is required to "determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2005). The standard for appellate review of the trial court's decision to terminate parental rights is abuse of discretion. In re Brim, 139 N.C. App. 733, 745, 535 S.E.2d 367, 374 (2000).
Pertinent to the trial court's decision to terminate are the findings that respondent: (1) relapsed into substance abuse while T.J.M. was placed with him, resulting in T.J.M.'s return to foster care; (2) failed to seek treatment or counseling for this relapse; (3) lacked stable housing; and (4) had shown apparent indifference to T.J.M.'s needs as evidenced by his failure to appear in the case in the six months prior to the termination hearing. In light of these findings, we discern no abuse of discretion in the trial court's conclusion that termination was in T.J.M.'s best interests. See In re A.D.L., J.S.L., C.L.L., 169 N.C. App. 701, 713, 612 S.E.2d 639, 647 (2005) (affirming termination where mother had tested positive for drugs, and failed to maintain secure employment and stable housing); In re Leftwich, 135 N.C. App. 67, 72-73, 518 S.E.2d 799, 803 (1999) (affirming termination where the parent failed to enroll in a drug treatment facility and to make other lifestyle improvements to help her better care for her children). The order of the trial court is affirmed.
Affirmed.
Judges McGEE and TYSON concur.
Report per Rule 30(e).
NOTES
[1] We also note respondent's contention that the trial court erroneously incorporated DSS's reports into its findings of fact. However, because we affirm the trial court's order without reference to any such incorporated findings, this assignment of error is overruled as moot.