An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-563

NORTH CAROLINA COURT OF APPEALS

Filed:  7 October 2014

IN THE MATTER OF:                    Lincoln County
J.L.                                 12 JT 08


Appeal by respondent from order entered 24 January 2014 by Judge Ali B. Paksoy in Lincoln County District Court.  Heard in the Court of Appeals 9 September 2014.

> *Peter C. McCrea for petitioner-appellee Lincoln County Department of Social Services.*
>
> *David A. Perez for respondent-appellant father.*


McCULLOUGH, Judge.

Respondent, father of the minor child J.M.L. ("Joanna"[1]), appeals from an order terminating his parental rights.  He also petitions this Court to review the order by writ of certiorari, in light of his counsel's failure to provide proof of service of his notice of appeal upon the guardian ad litem ("GAL").  The record reflects the GAL was notified of respondent's appeal by the appellate entries and by respondent's service of the

---

[1]The parties stipulated to this use of this pseudonym to protect the juvenile's privacy.

proposed and settled record on appeal. The GAL has not claimed prejudice or moved to dismiss the appeal based on the lack of service of the notice of appeal. Inasmuch as "failure to include a certificate of service for the notice of appeal does not support dismissal of the appeal if the appellee has waived the issue by failing to raise the issue by motion or otherwise[,]" we find respondent's notice sufficient to invoke this Court's jurisdiction. *McQuillin v. Perez*, 189 N.C. App. 394, 396, 657 S.E.2d 924, 926 (2008). Therefore, we dismiss his petition for writ of certiorari as moot.

Joanna was born out-of-wedlock in Pennsylvania in February 2010. After a period in Florida, Joanna's mother moved with her to Lincoln County, North Carolina. On 25 February 2012, the Lincoln County Department of Social Services ("DSS") filed a juvenile petition alleging that Joanna was neglected and dependent. Joanna's mother subsequently pled guilty to misdemeanor child abuse and served a 60-day jail sentence ending on 17 July 2012. The district court adjudicated Joanna a neglected juvenile on 16 July 2012.

Joanna's mother initially identified another man, Mr. R., as the putative father. Mr. R. was determined not to be Joanna's father on 29 October 2012. After relinquishing her own

parental rights on 28 November 2012, Joanna's mother named respondent as the father but provided DSS only with his first and middle names. Adoption worker Megan Homan was able to locate respondent on Facebook and sent him a message on 28 December 2012. Respondent did not respond to the message but phoned foster care social worker Amy Ramsey on 25 January 2013. Ramsey notified respondent of Joanna's permanency planning hearing scheduled for 28 January 2013, but he did not attend. Homan spoke with respondent by phone on 7 March 2013 and arranged a paternity test, which confirmed his paternity of Joanna on 13 May 2013.

DSS filed a petition to terminate respondent's parental rights on 28 March 2013. After hearing evidence on 9 December 2013, the district court determined that grounds existed to terminate respondent's parental rights based on his neglect and willful abandonment of Joanna. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (7) (2013). The court further concluded that the termination of respondent's parental rights was in the best interest of the minor child. Respondent appealed from the 24 January 2014 termination order.

Respondent challenges only the district court's adjudication of grounds to terminate his parental rights under

N.C. Gen. Stat. § 7B-1111(a) (2013). In reviewing the adjudication, we must determine whether the court's findings of fact are supported by the evidence, and whether those findings in turn support the court's conclusions of law. *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000). Unchallenged findings, or findings supported by competent evidence, are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991); *In re McCabe*, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003). Moreover, "erroneous findings unnecessary to the determination do not constitute reversible error" where the adjudication is supported by sufficient additional findings grounded in competent evidence. *In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006). We review conclusions of law *de novo*. *In re J.S.L.*, 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).

Subsection 7B-1111(a) authorizes termination of parental rights where "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C. Gen. Stat. § 7B-1111(a)(7).

> Abandonment has been defined as wil[l]ful neglect and refusal to perform the natural and legal obligations of parental care and

> support. It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child.

*In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 427 (2003) (citation and quotation marks omitted). "The word 'willful' encompasses more than a mere intention, but also purpose and deliberation." *In re McLemore*, 139 N.C. App. 426, 429, 533 S.E.2d 508, 509 (2000). "[T]he findings must clearly show that the parent's actions are wholly inconsistent with a desire to maintain custody of the child." *In re S.R.G.*, 195 N.C. App. 79, 87, 671 S.E.2d 47, 53 (2009). The willfulness of a parent's conduct "is a question of fact to be determined from the evidence." *In re Searle*, 82 N.C. App. 273, 276, 346 S.E.2d 511, 514 (1986).

For purposes of N.C. Gen. Stat. § 7B-1111(a)(7), the "determinative period" in the case *sub judice* was 28 September 2012 through 28 March 2013, the date DSS filed its petition. *In re S.R.G.*, 195 N.C. App. at 84-85, 671 S.E.2d at 51-52. The district court found the following facts relevant to its adjudication:

> 15. . . . The respondent spoke to the mother sometime around April, 2012; the mother

told him at that time that he could be the child's father and that the child was in North Carolina in foster care and that she needed him to be in the child's life. This was the last time the respondent heard from the mother.

16. That the [respondent] made no further effort to contact the mother or to obtain any information about the mother or the child. He had wanted the mother to submit to a DNA test but wanted the mother to come to Pennsylvania to do that. She was said to be living in Florida at that time.

17. That one of petitioner's social workers located [respondent] on Facebook. She sent him a Facebook message in December, 2012. He received the message in January, 2013. On January 25, 2013, he spoke to Amy Ramsey . . . . Ms. Ramsey gave him contact information and explained to him that he may have a child in North Carolina. She explained to him that the next court date regarding the child was on January 28, 2013. The respondent . . . did not appear at that court hearing. The next contact that [respondent] had with the Department was not until March 7, 2013.

18. . . . [Respondent] . . . did not visit the child from January 25, 2013 when he spoke to Ms. Ramsey up to and including the time of the filing of the Termination of Parental Rights Petition . . . on March 7, 2013.

19. That [respondent] was incarcerated in Pennsylvania from March 23, 2013 through August 20, 2013. [DSS] arranged for paternity testing in May, 2013 and it was

later determined that the respondent was the father of the child.

20. That [respondent] testified at this hearing, and the Court so finds, that as early as April, 2012 he assumed he was the father of the juvenile who is the subject of this proceeding.

21. That [respondent] has never met the child or had any contact with the child.

22. That [DSS] had through its social workers, on a number of occasions, offered the father visits with the child but he never followed through with this. Furthermore, he never asked for any information about the child from [DSS].

23. That [respondent] has been on parole since his release from prison. He was able to get permission from his parole officer to attend this hearing. However, when [DSS] encouraged the respondent to visit with his child after he was released from prison he stated that he was not able to leave Pennsylvania because of his parole but that he would talk to his parole officer to see if an exception could be made. However, he never did that and did not visit with the child while he had the opportunity to do so.

24. That [respondent] could have attended the January 28, 2013 hearing concerning his daughter. However, despite knowing about the hearing he did not attend.

25. That [DSS] sent numerous letters to [respondent] informing him about his child and the case here in North Carolina. Furthermore, [DSS] informed

the [respondent] of services he would need to be undertaking including services for domestic violence, psychological exam, parenting classes and substance abuse. Furthermore, he was urged to maintain contact and was told that he would be responsible for paying child support. The respondent did not complete or undertake any of these things except that he did have a drug assessment.

. . . .

27. That approximately one month after [respondent] was released from jail, he contacted the social worker from [DSS] and discussed the things that he would need to be working on. However, he never followed through with these things. . . .

28. That [respondent] has not made any inquiries about the welfare of his child; nor has he sent any cards, letters, or gifts to the child or paid any support of any kind for the cost of care for the child.

29. That social [w]orker Megan Homan sent at least six letters to [respondent] concerning his daughter [Joanna]. Up and through September 2013, [respondent] never contacted social worker Homan. Any contact they had was initiated by Ms. Homan. When [respondent] was released from prison he still made no effort to carry out any of the services that had been recommended or made any effort to visit his daughter, or pay any support of any kind.

30. That [respondent] is employed full time working 40 hours a week and making $11.00 an hour.

. . . .

> 35. That [respondent's] failure to establish or maintain a relationship with the child, pay adequate support for the child and undertake or complete those tasks and services that were requested of him has continued up until the time of this hearing.

Based on these findings, the court concluded that respondent "has willfully abandoned the child for at least six consecutive months immediately preceding the filing of the petition." *See* N.C. Gen. Stat. § 7B-1111(a)(7).

Respondent challenges many of the quoted findings as unsupported by the evidence. He objects to finding 16 as "misleading" in its depiction of his inaction toward determining his paternity of Joanna after April 2012. Respondent asserts that Joanna's mother "assured [him] repeatedly" she would return to Pennsylvania for the test. He further contends finding 16 fails to note that he was on probation and thus could not leave Pennsylvania.

We find no merit to respondent's claim. Homan provided the following account of her discussion with respondent about paternity:

> During my first conversation [on 7 March 2013], I asked if it was possible that he

could be J[oanna]'s father. And he said that he had been told by the mother, when J[oanna] was around a year old, that he could be the father, and that he and the mother both wanted paternity testing completed.

However, the mother was not in town at the time. *And he was unwilling to travel to Florida for the paternity test.* And the mother kept saying that she was going to come back to Pennsylvania, so that he could get the paternity testing done then.

He also said that he found out in the summer 2011 that J[oanna] was in foster care.[2] However, he made no contact with the Department to set up any paternity testing at that time.

(Emphasis added). Although respondent testified that he "couldn't leave the state" when the mother contacted him in April 2012 because of his probation, the district court was not required to find this claim credible. *See State v. Harrison*, 164 N.C. App. 693, 697-98, 596 S.E.2d 834, 838 (2004). Nor does this testimony suggest that respondent was unable to leave Pennsylvania for paternity testing at any time between the summer of 2011 and his incarceration in March 2013.

Respondent contests finding 20 on the ground that no evidence established he "assumed" he was Joanna's father when

---

[2]Ramsey also attested to respondent's awareness "in the summer of 2011" that the child was in foster care.

contacted by her mother in April 2012. Respondent actually testified, "I assumed it was a possibility that . . . I could've been the father." However, the precise nature of respondent's mental processes upon learning of Joanna's existence is immaterial, given his duty to her as a father. *Cf. In re T.L.B.*, 167 N.C. App. 298, 303, 605 S.E.2d 249, 252 (2004) (noting fathers' obligation to identify and assume responsibility for their illegitimate children); *cf. also In re Adoption of S.D.W.*, __ N.C. __, __, 758 S.E.2d 374, 381 (2014) (concluding biological father had no constitutionally protected interest as a parent when he "failed to grasp that opportunity by taking any of the steps that would establish him as a responsible father."). Inasmuch as respondent was aware of his possible paternity of Joanna and took no action, we deem any error in this finding to be harmless. *See generally Starco, Inc. v. AMG Bonding and Ins. Servs.*, 124 N.C. App. 332, 335, 477 S.E.2d 211, 214 (1996) ("[A]n appellant must not only show error, but that . . . the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action.").

Contrary to respondent's assertion, we find competent evidence to support finding 22. Homan testified that DSS

repeatedly offered respondent visits with Joanna, both in conversation and by letter. Respondent also objects to finding 23, insofar as it states he failed to seek permission from his parole officer to visit Joanna following his release from jail in August 2013. We agree that respondent testified he asked his parole officer about visitation, and that such visits had been approved provided respondent otherwise complied with his parole. Nonetheless, respondent then conceded that he "still didn't come to visit the child[.]" He explained this failure by noting that Lincoln County was "really far away and with my job that I just started, I can't, can't really be missing too many days." Given this admission, and the fact that respondent's release from jail postdated the relevant period under N.C. Gen. Stat. § 7B-1111(a)(1), any error in this finding is harmless.

Respondent also challenges finding 24, which states he could have attended Joanna's permanency planning hearing on 28 January 2013. The evidence shows that Ramsey notified respondent of the hearing on 25 January 2013, and also provided him with her contact information and informed him of Joanna's status in foster care. Respondent testified only that he "was working" during this period, which predated his incarceration in March 2013. Asked whether he had sought to be allowed to attend

court hearings while he was incarcerated, respondent replied, "I never knew I had to come to court." The evidence permits a reasonable inference that respondent could have attended the 28 January 2013 hearing had he chosen to do so. *See generally In re Hughes*, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985) (Where "different inference[s] may be drawn from the evidence, [the trial court] alone determines which inferences to draw and which to reject.").

Respondent casts findings 25, 27, and 29 as "misleading" and "erroneous" to the extent they describe his failure to "complete or undertake" the services requested by DSS. Homan's and respondent's testimonies support the findings that respondent was repeatedly advised of the requirements of a case plan but "never followed through" with any of these requirements other than the drug assessment completed for his probation officer. While respondent averred he was ineligible for domestic violence treatment without a court order and that he "put [his] name in for" parenting classes starting in Spring of 2014, the court was not obliged to credit these unsupported and self-serving claims. *See State v. Harrison*, 164 N.C. App. at 697-98, 596 S.E.2d at 838. As for finding 29, Honan testified that respondent "did [not] become any more active in doing the

things [DSS] suggested he do" following his release from jail in August 2013. Though respondent purported to have arranged for $187 in monthly child support to be deducted from his paycheck, he acknowledged that "[n]othing ever happened."

Respondent next excepts to finding 28, arguing that the evidence shows he was in contact with DSS about Joanna before, during, and after his incarceration from 26 March to 20 August 2013. Finding 28 specifically states, however, that respondent "has not made any inquiries *about the welfare of his child*; nor has he sent any cards, letters, or gifts to the child or paid any support of any kind[.]" (Emphasis added) Homan testified that, since DSS first contacted him in December 2012, respondent had no contact with Joanna and had not "asked . . . anyone in [DSS] to be able to have visits, contact, [or] anything like that" or "asked for any specific information about his daughter[.]" Finally, respondent acknowledged having paid no support for Joanna, even at the time of the termination hearing. Accordingly, this exception is overruled.

As summarized above, competent evidence also supports finding 35,[3] that respondent's "failure to establish or maintain

---

[3]Insofar as respondent objects to additional findings of fact, we find that they pertain to the adjudication of neglect under N.C.

a relationship with [Joanna], pay adequate support for the child and undertake or complete those tasks and services that were requested of him has continued up until the time" of the 9 December 2013 termination hearing.

Having reviewed the contested findings, we turn to respondent's exception to the district court's conclusion that he "willfully abandoned [Joanna] for at least six (6) consecutive months immediately preceding the filing of the Petition" as required to establish grounds for termination under N.C. Gen. Stat. § 7B-1111(a)(7). He notes that his paternity was not established until May 2013, "more than a month after the filing of the termination petition[.]" Moreover, absent evidence that he knew of his daughter's whereabouts or contact information prior to January 2013, respondent argues that "he cannot be held to have willfully withheld . . . indications of his parental affection for Joanna during approximately half of the relevant six month time period."

Respondent's argument assumes that he is not accountable for his inaction toward Joanna prior to being contacted by DSS. Given his avowed awareness of the child's existence as early as of 2011, and certainly by April 2012, this assumption is

Gen. Stat. § 7B-1111(a)(1) and need not be addressed.

unwarranted. Moreover, although the "determinative" period for purposes of N.C. Gen. Stat. § 7B-1111(a)(7) is 28 September 2012 through 28 March 2013, we believe respondent's conduct both prior and subsequent to this interval is instructive as to the willfulness of his conduct during the critical six months. *See In re Searle*, 82 N.C. App. at 276, 346 S.E.2d at 514 (noting that "respondent's behavior between 15 May 1983 and 15 November 1983 is determinative" but considering his conduct prior thereto); *see also In re Hendren*, 156 N.C. App. 364, 369-70, 576 S.E.2d 372, 376-77 (2003) (considering incarcerated father's lack of effort to attend the termination hearing as evidence of abandonment).

We conclude the district court's findings support its adjudication of willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7). The findings show that respondent made no effort to establish contact with Joanna, to provide support for her, or to obtain information about her. Although respondent was jailed for a portion of the relevant six-month period, "a respondent's incarceration, standing alone, neither precludes nor requires a finding of willfulness" under N.C. Gen. Stat. § 7B-1111(a)(7). *In re McLemore*, 139 N.C. App. at 431, 533 S.E.2d at 510-11 (citing *In re Harris*, 87 N.C. App. 179, 184, 360 S.E.2d 485, 488

(1987)).  Finally, while respondent consented to a paternity test arranged by DSS and spoke by telephone with two social workers, these minimal efforts do not preclude a finding of willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7).  *See In re R.R.*, 180 N.C. App. 628, 634, 638 S.E.2d 502, 506 (2006) (Father's effort "to legitimize the child through marriage and amendment of the child's birth certificate . . . does not adequately replace the presence, love and care of a parent-delivered by whatever means available."); *In re McLemore*, 139 N.C. App. at 430, 533 S.E.2d at 510 (Incarcerated parent's "one feeble *attempt* at providing financial support" or contacting the child during the six-month period does not preclude a finding of willful abandonment.).

Respondent next challenges the district court's adjudication of neglect under N.C. Gen. Stat. § 7B-1111(a)(1). It is well established, however, that any "single ground . . . is sufficient to support an order terminating parental rights." *In re J.M.W.*, 179 N.C. App. 788, 789, 635 S.E.2d 916, 917 (2006).  Having upheld the adjudication under N.C. Gen. Stat. § 7B-1111(a)(7) we need not review the second ground found by the court.  *In re Humphrey*, 156 N.C. App. at 540, 577 S.E.2d at 426. Because respondent does not separately contest the court's

ruling at disposition, we hereby affirm the termination order.

Affirmed.

Judges CALABRIA and STEELMAN concur.

Report per Rule 30(e).