IN THE SUPREME COURT OF NORTH CAROLINA

No. 273A19

Filed 3 April 2020

IN THE MATTER OF: B.C.B.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 22 April 2019 by Judge Kathryn Overby in District Court, Alamance County. This matter was calendared in the Supreme Court on 25 March 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*A.E., pro se, petitioner-appellee mother.*

*Mercedes O. Chut for respondent-appellant father.*

NEWBY, Justice.

Respondent appeals from the trial court's order terminating his parental rights to B.C.B. (Brian).[1] We affirm.

Respondent and petitioner are the biological father and mother of Brian, who was born in 2015 during the parties' brief relationship. On 17 November 2016, petitioner filed a complaint for child custody and child support and requested the entry of an emergency ex parte temporary child custody order. The trial court granted petitioner temporary custody of Brian by ex parte order. On 30 November 2016, the

---

[1] A pseudonym is used to protect the identity of the juvenile and for ease of reading.

parties entered into a Memorandum of Judgment which granted them joint legal custody of Brian and established a temporary custody schedule. A few months later, the parties entered into another Memorandum of Judgment which established a permanent child custody schedule. On 1 February 2017, petitioner obtained a domestic violence protection order (DVPO) against respondent based on incidents that occurred in November 2016.

In July 2017, respondent was arrested for driving while impaired. In September 2017, respondent was involved in an altercation with his pregnant girlfriend, which led to criminal charges and his girlfriend obtaining a DVPO against respondent. In October 2017, petitioner filed a motion for an ex parte order seeking sole custody of Brian. The trial court allowed the ex parte motion and suspended respondent's visitation until a hearing could be held. After a hearing, in November 2017, the trial court awarded petitioner sole custody of Brian and granted respondent supervised visitation once a week at Family Abuse Services.

On 6 December 2018, petitioner filed a complaint in the trial court which she intended to be a petition to terminate respondent's parental rights. Respondent was appointed counsel to represent him in the matter, and on 31 January 2019, counsel filed a motion to dismiss for lack of subject matter jurisdiction. On 21 February 2019, the trial court dismissed the petition for lack of subject matter jurisdiction because the petition was not properly verified.

Six days later, petitioner refiled her petition. Petitioner alleged respondent's parental rights to Brian should be terminated on the basis of willful abandonment and respondent's failure to pay child support. *See* N.C.G.S. § 7B-1111(a)(4), (7) (2019). On 26 March 2019, respondent moved to dismiss the petition under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. *See* N.C.G.S. § 1A-1, Rule 12(b)(6) (2019). On the same day, respondent filed an answer denying many of the material allegations in the petition. A few weeks later, prior to the termination hearing, the trial court denied respondent's motion to dismiss the petition.

On 22 April 2019, the trial court entered an order in which it determined that grounds existed to terminate respondent's parental rights on the basis of willful abandonment. *See* N.C.G.S. § 7B-1111(a)(7). It also concluded that it was in Brian's best interest that respondent's parental rights be terminated. The court thus terminated respondent's parental rights, and respondent appealed to this Court.

Respondent argues that the trial court erred (1) by denying his motion to dismiss the petition and (2) by terminating his parental rights on the basis of willful abandonment. We address each of these arguments in turn.

First, respondent contends that petitioner failed to sufficiently allege grounds to terminate his parental rights under N.C.G.S. § 7B-1104 and, therefore, the trial court should have dismissed the petition for failure to state a claim upon which relief can be granted. Specifically, respondent claims that the petition contains allegations

regarding the child support order and his failure to make payments under that order but fails to allege that respondent's failure to pay was willful. He also argues that although the petition cites N.C.G.S. § 7B-1111(a)(7) and references the requirements of the custody order, it neither alleges that he willfully failed to comply with the order nor alleges facts supporting the termination of his parental rights on the basis of willful abandonment. We disagree and hold that the petition was sufficient to survive respondent's motion to dismiss.

A petition seeking to terminate parental rights must state "[f]acts that are sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist." N.C.G.S. § 7B-1104(6) (2019). We agree with the Court of Appeals that "[w]hile there is no requirement that the factual allegations be exhaustive or extensive, they must put a party on notice as to what acts, omissions or conditions are at issue." *In re Hardesty*, 150 N.C. App. 380, 384, 563 S.E.2d 79, 82 (2002).

The petition here cited both N.C.G.S. § 7B-1111(a)(4) and (7) as grounds for termination and specifically alleged that respondent's failure to pay child support and his abandonment of Brian were willful. In support of these allegations, petitioner cited the trial court's custody and child support orders. Contrary to respondent's claims, petitioner addressed at length respondent's violation of the child custody orders, which she claimed show respondent's willful abandonment of Brian. Petitioner specifically alleged that since September 2017, respondent had declined to

exercise visitation as permitted by the trial court. The petition thus contained more than a mere recitation of the statutory grounds for termination and gave respondent sufficient notice of the "acts, omissions or conditions . . . at issue." *In re Hardesty*, 150 N.C. App. at 384, 563 S.E.2d at 82. Therefore, we hold that the trial court's denial of respondent's motion to dismiss was appropriate.

Second, respondent contends that the trial court erred by terminating his parental rights on the basis of willful abandonment. Specifically, he challenges several of the trial court's findings of fact and argues that record evidence does not show that he willfully abandoned Brian. We disagree and hold that the trial court's determination that grounds existed to terminate respondent's parental rights was supported by its findings of fact and that those findings are supported by clear, cogent, and convincing evidence.

A termination of parental rights proceeding consists of an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2019); *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under subsection 7B-1111(a). N.C.G.S. § 7B-1109(f) (2019). When reviewing a trial court's determination that grounds existed to terminate parental rights, we ask "whether the [trial court's] findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. at 111, 316 S.E.2d at 253 (citing *In re Moore*, 306

N.C. 394, 404, 293 S.E.2d 127, 133 (1982)). If the petitioner meets her burden during the adjudicatory stage, "the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110). In this case respondent only challenges the trial court's determination at the adjudicatory stage that statutory grounds existed to terminate his parental rights.

A trial court may terminate a parent's parental rights when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion." N.C.G.S. § 7B-1111(a)(7). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. at 251, 485 S.E.2d at 617 (citation omitted). "[I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (citation omitted). "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." *In re Adoption of Searle,* 82 N.C. App. 273, 276, 346 S.E.2d 511, 514 (1986). "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period

-6-

for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re N.D.A.*, 373 N.C. 71, 77, 833 S.E.2d 768, 773 (2019) (citation omitted).

The relevant six-month period in this case is from 27 August 2018 to 27 February 2019. The trial court made the following pertinent findings of fact:

> 25. The petitioner filed a motion for [an] ex parte order in 16 CVD 2098 on October 2, 2017. Judge Messick allowed that ex parte order on October 4, 2017 suspending the respondent father's visitation until a hearing could be held.
>
> 26. On November 7, 2017 Judge Messick had a hearing on the return on the ex parte order. He granted the petitioner sole legal custody of the minor child. Judge Messick allowed the respondent father visitation with the minor child once a week at Family Abuse Services (FAS) supervised visitation center.
>
> 27. The petitioner went shortly thereafter to sign up for her portion of the supervised visitation agreement. The respondent father spoke to his attorney about going to FAS for visits in December 2017, but he did not contact FAS for supervised visitation until February 15, 2019, some fifteen months after being ordered to do so by Judge Messick. When he did set up visitation at FAS, the respondent father requested weekends, however he forgot that he was to be incarcerated on weekends in March and April for a Driving While Impaired split sentence. He also forgot to show up for that first jail weekend, resulting in his serving seven days straight in the Alamance County Jail. The weekend jail schedule was set on February 7, 2019.
>
> 28. The respondent father then followed up at FAS on March 29, 2019 about his visits with the minor child, some six weeks after his first contact with FAS.
>
> 29. The respondent father indicated that it took from

December 2017 to February 2018[2] to go contact FAS for visits with the minor child because he had so much going on. The Court does not find this to be credible.

30. During the ex parte hearing on November 7, 2017 the petitioner's attorney argued for the respondent father to attend the domestic violence prevention program (DVPP) before exercising visitation with the minor child. Neither in his oral rendition of the order in open court on November 7, 2017 nor in his written order did Judge Messick order such a requirement. Rather Judge Messick allowed the respondent father visitation at FAS once a week with no prerequisites.

31. The respondent father was in Court when Judge Messick rendered his order orally. He testified that he never received a copy in the mail of the written order. However, the respondent father never came to the court house and requested a copy of the order. Nor did he update his address with the clerk's office to receive information in a timely fashion. His attorney argued that it was the petitioner's attorney's responsibility to make sure that the respondent father received a copy of the Court's order. The Court finds this to be over burdensome on the attorney. The burden sits firmly with the party and they have the responsibility to update the clerk with any and all address changes.

32. The respondent father testified that he did not exercise his visitation with the minor child nor did he reach out to the petitioner from November 2017 through January 2018 because he thought he had to enroll in and complete DVPP before visitation could begin. This was an erroneous assumption. Even if he was correct in his assumption, he did not communicate with the petitioner about the well-being of the minor child during this time frame. He did not send any cards, letter or presents to the minor child during this time frame.

---

[2] This date appears to be a clerical error. The correct date was in February 2019.

33. The petitioner's parents have lived in the same residence for over twenty-eight (28) years. The respondent father has been to that residence multiple times with the petitioner. Yet the respondent father never made any contact with the petitioner's parents to inquire about the well-being of the minor child or to leave gifts . . . for the minor child.

. . . .

37. On January 16, 2018 Judge Messick renewed the DVPO for two additional years with the modification that the respondent father was to have no contact with the petitioner. There is no constraint on the respondent father's ability to contact the minor child.

. . . .

42. Even though it was ordered in November 2017 the respondent father did not begin DVPP until February 22, 2018. He was unsuccessfully terminated from the DVPP on July 13, 2018 for missing four sessions, not for non-payment.

. . . .

58. The respondent father has willfully chosen not to see or inquire about the minor child since September 2017.

"Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citation omitted). We review only those findings necessary to support the trial court's conclusion that grounds existed to terminate respondent's parental rights on the basis of willful abandonment. *Id.* at 407, 831 S.E.2d at 58–59 (citing *In re Moore*, 306 N.C. at 404, 293 S.E.2d at 133).

Respondent challenges findings of fact 26, 27, 28, 30, 32, 33, 37 and 58. He first contends that Finding of Fact No. 26 wrongly states that he was allowed visitation with Brian because Judge Messick did not immediately institute supervised visits. Respondent claims that, instead, Family Abuse Services imposed requirements on both parties that were to be completed before visits could be arranged. We disagree. The child custody order shows that respondent was granted supervised visitation with Brian and that the only prerequisite was that both parties were required to complete an intake session with Family Abuse Services within two weeks of the trial court's order. Petitioner attended an intake session on 8 November 2017, the day after the custody hearing. Had respondent attended an intake session as ordered, he could have exercised visitation immediately. We conclude that there is sufficient evidence in the record to support Finding of Fact No. 26.

Respondent next challenges findings of fact 27, 28 and 30. Respondent argues that the evidence ultimately does not show that he had the ability to complete the intake session and attend visitation with Brian before February 2019. He also argues that the trial court's findings that he, in essence, willfully ignored the trial court's order granting him supervised visitation are not supported by the evidence. We disagree.

Petitioner testified at the termination hearing that in open court respondent was granted supervised visitation through Family Abuse Services with no prerequisites. Respondent, however, testified that he believed he had to complete the

domestic violence prevention program courses before he could exercise visitation. After hearing the testimony of both petitioner and respondent and evaluating their credibility, the trial court determined that there was no such requirement. This Court is not in a position to question that determination. *See In re D.L.W.*, 368 N.C. at 843, 788 S.E.2d at 167–68 (stating that the trial judge has the duty to consider all the evidence, pass upon the credibility of the witnesses, and determine the reasonable inferences to be drawn therefrom); *see also Scott v. Scott,* 157 N.C. App. 382, 388, 579 S.E.2d 431, 435 (2003) (stating that when the trial court sits as fact-finder, it is the sole judge of the credibility and weight to be given to the evidence, and the appellate courts should not substitute their judgment for the trial court's judgment). We thus conclude that sufficient record evidence supports findings of fact 27, 28, and 30.

The trial court's findings of fact regarding respondent's failure to contact Family Abuse Services about visitation privileges until March 2019, including findings of fact 28 and 29, are further supported by the record. Respondent contends that he did not complete the intake session and attend visitation because he was incarcerated three times during the relevant period. He further asserts that he did not testify at the termination hearing that he failed to arrange visits because "he had so much going on." We are unpersuaded. Although respondent was incarcerated for portions of the relevant six-month period, he was not incarcerated for its entirety. Respondent was incarcerated when he was served with petitioner's first petition to terminate his parental rights, but he was released from custody soon thereafter.

Respondent was not incarcerated in January 2019 or during the period before respondent filed the petition to terminate his parental rights on 27 February 2019. Respondent further testified that after he was served with the initial, improperly verified petition to terminate his parental rights, he discussed with his attorney that he could go to Family Abuse Services to begin the process of setting up visitation with Brian, but nevertheless failed to do so. He also explained that he failed to go to Family Abuse Services in January 2019 because he had "so much going on at one time." Thus, the trial court's findings of fact are supported by clear, cogent, and convincing evidence.

Respondent challenges the trial court's factual finding stating that he was represented by counsel at the 7 November 2017 hearing. We agree that this portion of the trial court's finding of fact was erroneous. Respondent's testimony and the child custody order from the hearing show that respondent was acting as his own counsel. We thus disregard this portion of the trial court's factual finding.

Respondent next argues that portions of findings of fact 32, 33, and 37 are erroneous. He claims the record contains no evidence that he had any way to contact Brian during the relevant six-month time period immediately preceding the filing of the petition to terminate his parental rights. He argues that he was prevented from contacting Brian due to the DVPO and because he did not have petitioner's contact information. We disagree. Though respondent may have been prevented from contacting petitioner during the six months immediately preceding the filing of the

petition because of the DVPO, the order did not prohibit respondent from contacting Brian or petitioner's parents. Petitioner also testified that respondent knew her parents and their address but neither made an effort to contact her parents to inquire about Brian's welfare nor left any cards or gifts for Brian. The record contains sufficient evidence to support the relevant portions of findings of fact 32, 33, and 37.

Respondent next challenges Finding of Fact No. 58, in which the trial court found that he willfully chose not to see Brian. He argues that the evidence does not show that respondent made a "willful determination to forego all parental duties and relinquish all parental claims" to Brian. We disagree. The Court of Appeals has correctly stated that a parent "will not be excused from showing interest in [a] child's welfare by whatever means available[,]" even if "his options for showing affection [were] greatly limited." *See In re R.R.*, 180 N.C. App. 628, 634, 638 S.E.2d 502, 506 (2006) (citation omitted) (rejecting respondent-father's argument that "he did not willfully abandon the child because he was not given the opportunity to participate in the child's life").

The trial court's findings of fact establish that respondent made no effort whatsoever during the statutory period to participate in Brian's life. These findings are supported by clear, cogent, and convincing evidence. Petitioner filed her initial petition to terminate respondent's parental rights in December 2018, which was dismissed and subsequently refiled by petitioner in February 2019. After respondent was served with the first petition to terminate his parental rights in December 2018,

he discussed with his attorney that he could go to Family Abuse Services to set up visitation with Brian. Nonetheless, respondent never went to Family Abuse Services to do so. Respondent was released from custody in December 2018, so, contrary to respondent's argument, his incarceration would not have hindered visitation. Though respondent was out of jail and fully aware that he could exercise visitation rights, he did not visit Brian. Thus, after being made aware that petitioner was seeking to initiate proceedings to terminate his parental rights, and after being given a second chance to prioritize his responsibility to care for Brian, respondent took no action because he had "so much going on at one time." Additionally, respondent neither sent Brian any gifts or cards nor inquired about Brian's welfare despite having petitioner's parents' address. Respondent also was not prohibited from contacting them. The trial court properly determined that respondent willfully chose not to see Brian.

The trial court's findings of fact demonstrate that respondent "willfully withheld his love, care, and affection from [Brian] and that his conduct during the determinative six-month period constituted willful abandonment." *In re C.B.C.*, 373 N.C. 16, 23, 832 S.E.2d 692, 697 (2019) (citation omitted). The trial court appropriately found grounds to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(7). We affirm.

AFFIRMED.